IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK GAYLORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-539C |
| | ) | |
| THE UNITED STATES, | ) | Judge Thomas C. Wheeler |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF THE CONTESTED FACT ISSUES**

Pursuant to the Court's Order of March 5, 2008, Defendant the United States ("the government") hereby respectfully submits its Statement of the Contested Fact Issues.

## I. CONTESTED BACKGROUND FACTS

1. On October 28, 1986, Congress enacted legislation to construct a memorial on the National Mall to honor veterans of the Korean War. See Pub. L No. 99-572, 100 Stat. 3226 (1986). Section 1 of the legislation authorized the American Battle Monuments Commission (ABMC), an independent commission of the United States Government, to establish the Korean War Veterans Memorial (KWVM). See id. Section 2 of the legislation created the Korean War Veterans Memorial Advisory Board ("Veterans Advisory Board" or VAB), consisting of twelve Korean War veterans, and made the group responsible for: recommending the site for the KWVM; selecting the design for the memorial; promoting the establishment of the memorial; and obtaining private funds for construction and upkeep of the KWVM. See id. The ABMC retained the United States Army Corps of Engineers (USACE) as its agent in the design and construction of the memorial.

2. The legislation also provided that the memorial was to be established in accordance with the National Capital Memorials and Commemorative Works Act. See id.; see generally 40 U.S.C. §§ 1001-1010 (Supp. 1988). Pursuant to the Act, the Fine Arts Commission (FAC), the National Capital Planning Commission, and the National Capital Memorial Commission were required to approve the final design of the KWVM. See 40 U.S.C. § 1008(a).

3. On June 1, 1989, a three-member team of architects from Pennsylvania State University won a contest sponsored by the ABMC to design the KWVM. The members of the team were Veronica Burns Lucas, Don Alvaro Leon, and John Paul Lucas (known collectively as BL3).

4. BL3's design for the KWVM included:

> a platoon size military unit passing from a zone of peace on the west, up a slight incline through a war zone, to its objective, the American flag in another area of peace. The military unit consisted of 30 stone figures, representing the combined elements of all branches of the Armed Forces that served in Korea.

Lucas v. United States, 25 Cl. Ct. 298, 301 (1992).

5. On October 13, 1989, the USACE selected Cooper-Lecky Architects P.C. (CLA) as the architectural/engineering (A/E) firm to design the KWVM. The two principals of CLA were Kent Cooper and William Lecky.

6. On April 11, 1990, the USACE and CLA entered into Contract No. DACA31-90-C-0057 with respect to CLA's A/E services for the KWVM project.

7. After CLA made many significant modifications to BL3's proposed design to meet the concerns of the FAC, BL3 sued the government in the United States Claims Court for breach of contract. See Lucas v. United States, 25 Cl. Ct. 298 (1992). In addition, BL3 sued the government and CLA in the United States District Court for the District of Columbia, claiming that the VAB had exceeded its statutory authority, and arbitrarily and capriciously violated its promulgated rules. See

Lucas v. United States Army Corps of Engineers, 1991 WL 229941 (D.D.C. 1991), aff'd, 990 F.2d 1377 (D.C. Cir. 1993); Lucas v. United States Army Corps of Engineers, 789 F. Supp. 14 (D.D.C. 1992).

8. In his role as a sculptor, Mr. Gaylord worked together with members of CLA, the Veterans Advisory Board, and the Fine Arts Commission to create a sculpture consisting of 19 stainless steel statues in the image of a platoon of foot soldiers in formation. The sculpture was entitled "The Column."

9. On July 26, 2006, Mr. Gaylord filed a separate complaint against Mr. Alli in the United States District Court for the District of Maryland, claiming that Mr. Alli infringed Mr. Gaylord's copyright in "The Column."

10. Mr. Alli and Mr. Gaylord resolved the district court case with a settlement agreement dated April 25, 2007, whereby Mr. Gaylord waived all claims for past damages.

## II. FAIR USE FACT ISSUES

### Contested Fact Issue – The Alli Photo is Transformative

11. The Alli Photo and the Stamp depict a new and unique artistic view of the KWVM through the selection of the scene, the timing of the photograph, the new graphic elements introduced, and the controlled lighting.

12. John Alli's purpose in creating the Alli Photo was different than Mr. Gaylord's purpose in creating "The Column."

13. The Postal Service's purpose in creating the Stamp was different than Mr. Gaylord's purpose in creating "The Column."

14. The Alli Photo and the Stamp altered the expression of "The Column."

15. The Alli Photo and the Stamp do not supercede the expression of "The Column."

**Contested Fact Issue – The Nature of "The Column" Allows and Encourages Pictorial Derivative Works**

16. "The Column" is a public work of art incorporated into a national monument.

17. "The Column" is visited by hundreds of people each day, and photographed by many of them.

18. Mr. Gaylord was aware of the ultimate purpose and location planned for "The Column" during his work on the project.

**Contested Fact Issue – The Stamp and the Alli Photo Copy Only Selected Portions of "The Column"**

19. The Stamp and the Alli Photo are two-dimensional pictorial works, as opposed to a three-dimensional sculpture.

20. The Stamp and the Alli Photo depict only one perspective of "The Column."

21. The Stamp and the Alli Photo depict only 10 of the 19 individual soldier statues.

22. Most of the soldier statues depicted in the Stamp and the Alli Photo are partially or completely obscured.

23. The Alli Photo uses other graphical elements to obscure portions of "The Column."

**Contested Fact Issue – The Postal Service's use of the Alli Photo did not affect Gaylord's potential market and did not affect the value of "The Column."**

24. Mr. Gaylord did not attempt to commercialize "The Column" after the late-1990s.

25. Neither Mr. Gaylord nor Mr. Triano has ever sold any photographs of "The Column."

26. Mr. Gaylord's last commercial project was completed in 2001. After completing that project, Mr. Gaylord sold his studio and retired from commercial sculpting.

27. The Postal Service's use of the Alli Photo did not harm any of Mr. Gaylord's actual business prospects.

28. The Postal Service's use of the Alli Photo did not harm any of Mr. Gaylord's potential business prospects.

29. After December 31, 1996, Mr. Gaylord and Mr. Triano did not make any attempt to market or license retail products related to "The Column."

30. After December 31, 1996, Mr. Gaylord and Mr. Triano did not sell any retail products related to "The Column."

31. After December 31, 1996, Mr. Gaylord and Mr. Triano have not licensed any copyright related to "The Column," other than in the context of the settlement agreement with John Alli.

32. Mr. Gaylord has not earned any income related to "The Column" since at least 2000, other than a check for $650 received as a result of a cease and desist letter in 2002.

33. Neither Mr. Gaylord nor Mr. Triano ever test-marketed the soldier statute.

## III. JOINT WORK FACT ISSUES

**Contested Fact Issue – To Create "The Column," Mr. Gaylord Jointly Worked with CLA, the VAB, and the FAC in Furtherance of a Common Design**

34. CLA, the VAB, and the FAC were responsible for the overall design of the KWVM, including "The Column."

35. CLA, the VAB, and the FAC were responsible for determining the number of individual soldier statues in "The Column."

36. CLA, the VAB, and the FAC were responsible for determining the positioning of the individual soldier statues in "The Column."

37. CLA, the VAB, and the FAC were responsible for determining the ethnicity of the individual soldier statues in "The Column."

38. CLA, the VAB, and the FAC were responsible for determining the military service of the individual soldier statues in "The Column."

39. CLA, the VAB, and the FAC were responsible for determining the equipment of the individual soldier statues in "The Column."

40. CLA, the VAB, and the FAC were responsible for deciding that the individual soldier statues should wear ponchos in "The Column."

41. CLA, the VAB, and the FAC were responsible for determining the texture and appearance of the ponchos in "The Column."

42. CLA, the VAB, and the FAC were responsible for determining the height and size of the individual soldier statues in "The Column."

43. CLA, the VAB, and the FAC were responsible for determining several key aspects of the appearance of the faces of the individual soldier statues in "The Column."

44. In many situations, Mr. Gaylord changed the appearance of "The Column" after he was instructed to do so by CLA.

45. Mr. Gaylord received guidance from CLA during the development of "The Column."

46. Nearly every element of Mr. Gaylord's work on "The Column" was subject to review by CLA, the VAB, and the FAC.

47. CLA exercised decision-making authority over the creation of "The Column."

48. On February 23, 2000, the KWVM USACE contracting officer issued a contracting officer's decision to Mr. Lecky of CLA, stating, *inter alia*, that the government held "an unlimited license with respect to any copyrights derived of the KWVM."

49. The contracting officer's decision was not appealed.

## IV. ARCHITECTURAL WORK EXCEPTION FACT ISSUES

50. "The Column" is embodied in the KWVM.

51. The KWVM is a permanent and stationary structure.

52. The KWVM was designed for humans to visit, walk through, and spend time in. Thus, the KWVM was designed for occupancy.

## V. DAMAGES FACT ISSUES

See Section II ¶ ¶ 24-33.

53. On September 17, 2002, the Postal Service entered into an agreement with Mr. Alli, whereby the Postal Service paid Mr. Alli a one-time fee of $1500 for the right to use the Alli Photo as part of the stamp.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JOHN J. FARGO
Director

s/ Scott Bolden

SCOTT BOLDEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

May 16, 2008

Attorneys for Defendant the United States