IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD,<br><br>        Plaintiff,<br><br>   v.<br><br>THE UNITED STATES OF AMERICA;<br><br>        Defendant. | No.: 06-539C |

**PLAINTIFF'S STATEMENT OF THE CONTESTED FACT ISSUES**

Pursuant to the Court's Order of March 5, 2008, Plaintiff Frank Gaylord ("Gaylord") hereby respectfully submits it Statement of the Contested Fact Issues.

Plaintiff's contested facts are shown below. Stipulated facts, shown in bold below, have been included as they appear in the signed stipulation, for ease of understanding the chronology and narrative of the contested facts.

1. **The Plaintiff, Frank C. Gaylord II, resides in Barre, VT (Stipulated Fact 1).**

2. **The United States Postal Service ("Postal Service") is an "independent establishment of the executive branch of the Government of the United States." 39 U.S.C. Section 201. The Postal Service has offices and branches throughout the United States. (Stipulated Fact 2).**

3. **Cooper-Lecky Architects ("CLA") was the prime contractor under the Department of the Army contract for the creation, construction and installation of the Korean War Veterans Memorial ("KWVM") (Stipulated Fact 3).**

4. **During 1990, CLA sponsored an open competition to select the figural sculptor for the sculptural component to be included in the KWVM. Mr. Gaylord participated in**

**the competition and was selected as sculptor (Stipulated Fact 4).**

5. In 1990, Frank C. Gaylord II ("Frank Gaylord") was a sculptor of recognized stature with a record of significant public works, including larger than life size sculpture in granite and cast metal.

6. The materials setting forth the sculpture selection criteria are silent on the subject of copyrights and conveyance of copyright rights was not a condition of the award of the commission for the sculptural works.

7. **The work-in-suit is sculpture that features 19 statues representing a platoon of soldiers in formation. It is entitled " The Column" and it is part of the KWVM on the National Mall in Washington, D.C. (Stipulated Fact 5).**

8. **"The Column" was completed and installed as part of the KWVM in 1995. (Stipulated Fact 6).**

9. **The KWVM was dedicated on July 27, 1995, the forty-second anniversary of the armistice of the Korean War. (Stipulated Fact 7).**

10. **Generally speaking, the KWVM consists of three primary components**: **"The Column" sculpture; the mural wall; and the reflecting pool. (Stipulated Fact 8).**

11. **CLA selected an artist named Louis Nelson as the muralist for the mural wall. CLA was responsible for designing the reflecting pool. (Stipulated Fact 9).**

12. Frank Gaylord was self-employed during the entire period of his work on the sculptural figures which extended from approximately mid-1990 (selection) to mid1995 (installation).

13. **Mr. Gaylord was assisted by his son-in-law, John Triano.   Mr. Triano helped**

**Mr. Gaylord with some of the labor of creating "The Column," and was responsible for handling the business, the accounting, and the paperwork for Mr. Gaylord's studio. (Stipulated Fact 10).**

14. After selection as sculptor and after Mr. Gaylord had begun to work on the sculpture, CLA asserted the right to obtain ownership of the copyrights in the Work on behalf of the government and attempted to force Mr. Gaylord to assign his copyrights by withholding contract payments for Mr. Gaylord' s commission work on "The Column."

15. Mr. Gaylord refused to give up his copyright rights in "The Column."

16. CLA expressly excluded all the provisions of Army prime contract relating to copyrights from the sub-contract that it entered into with Frank Gaylord on January 19, 1993 (para. III) and stated that "copyright ownership of the work of art shall be covered in a separate agreement," (para. VI, A). CLA expressly agreed that the artist would have the right to a credit line on the completed design and any visual representation embodying such designs…." (para. VI, C).

17. In May 1994, CLA reported to Frank Gaylord that the government, through the Army Battle Monuments Commission, had withdraw all claim for copyright ownership and/or royalties in the sculpture.

18. In February 1995, Gaylord entered into an agreement with CLA which permitted CLA to license the work " The Column" subject to prior approval by Frank Gaylord and an agreed royalty schedule.

19. In the February 1995 agreement, CLA acknowledged that Frank Gaylord was the sole owner of the copyright in the Work.

20. Gaylord expressly terminated the agreements and CLA' s licensing authority for breach in October 1995.

21. Frank Gaylord is the sole contributor of original, copyrightable subject matter to the 19 larger than life size sculptural figures of soldiers in formation (the " Work" ), which became known as " The Column."

22. **Mr. Gaylord submitted copyright applications for the copyright registrations on the work " The Column" and received certificates of registration for the same (Stipulated Fact 11).**

23. Gaylord received, among others, the following United States Copyright Registrations for "The Column:" United States Copyright Registration Nos. VAu 280 954, registered November 15, 1993; VAu 280 955, registered November 18, 1993, VAu 306 934, registered August 12, 1994, and Vau 342 493, registered May 1, 1995; and United States Copyright Registration VA 716-095 issued May 1, 1995.

24. **In January 1996, a photographer named John Alli visited the KWVM during a snowstorm and took a photograph (the "Alli Photo"). (Stipulated Fact 12).**

25. **In 2002, the United States Postal Service ("Postal Service" ) decided to issue a 37-cent postage stamp commemorating the fiftieth anniversary of the armistice of the Korean War. The Postal Service decided to incorporate the Alli Photo into the stamp image. (Stipulated Fact 13).**

26. **On July 27, 2003, the Postal Service issue the stamp (the "Stamp"). (Stipulated Fact 14).**

27. The Stamp depicted an image of "The Column" showing several of the figures, including

the lead figure, in the snow.

28. The mural wall and the reflecting pool are now shown in the Stamp.

29. The only portion of the KWVM shown in the stamp is "The Column."

30. John Alli did not seek Frank Gaylord's permission to put the Alli Image on the Stamp.

31. John Alli advised the Postal Service that they would need, in addition to his permission, the permission of the owner of the copyright in the sculpture.

32. **The Postal Service did not seek Mr. Gaylord's permission to depict the work "The Column" on the Stamp or any related retail goods. (Stipulated Fact 16).**

33. Frank Gaylord did not give permission, express or otherwise, for the Postal Service to use an image of "The Column" on the Stamp.

34. A search of copyright office records in 2002 would have identified Frank Gaylord as the author and owner of the copyrights in "The Column."

35. **The Postal Service produced approximately 86.6 million Stamps before the Stamp was retired on March 31, 2005, as well as a variety of other retail goods featuring the image of the Stamp. (Stipulated Fact 15).**

36. **The Stamp and the retail goods did not identify Mr. Gaylord as the sculptor of "The Column." (Stipulated Fact 17).**

37. The Postal Service generated revenue from the sale of stamps and merchandise bearing copies of the copyrighted work "The Column."

38. The Postal Service denied Frank Gaylord's ownership of the copyright in "The Column" and refused to compensate Frank Gaylord for its use of the copyrighted work "The Column."

39. The Postal Service printed 86,800,00 stamps bearing the copyrighted work "The Column" and has asserted that it retired 6.86% of them. The difference represents 80,845,520 stamps with a total sales revenue potential of $29,912.842.50.

40. **The Postal Service admits to receiving $17,726,917.19 from the sale of 47,910,587 stamps, excluding those stamps that were included in other philatelic merchandise (Stipulated Fact 18).**

41. The Postal Service has not accounted for the disposition of the stamps representing the difference between 80,845,520 stamps that were "not retired" and the 47,910,587 stamps that were admittedly sold.

42. The Postal Service ran at an overall gross profit of 1% during the period in which the infringement occurred. G1727.

43. The Postal Service did a stamp retention survey that showed that at least $5.4MM in Korean War Veterans Memorial Stamps that were sold in 2003 alone were retained by households that did not intend to exchange them for postal services.

44. Stamps which the Postal Service's own studies show are retained should be treated, for purposes of royalty calculations, as "merchandise" and not pre-paid postage.

45. David Faillor, the Manager of Stamp Services at the time of the issuance of the Stamp at issue here, described Postal Service profits of $100-200MM per year as a result of "retained" stamps in an interview with USA Today in May 2005.

46. The Postal Service sold $330,919.49 in other retail goods that were not stamps per se that that were based upon or incorporated principally the Stamp image at an overall gross profit of 80%.

47. **The Postal Service licensed third parties at a royalty of 8% of net sales for the non-exclusive right to use the image of Stamp on retail goods. The Postal Service received $17,831.93 in revenue from these licenses. (Stipulated Fact 19).**

48. Frank Gaylord has licensed the work "The Column" in arms length transactions at a rate of 10% of direct sales of merchandise.

49. Frank Gaylord has historically used a royalty rate of 10% of merchandise sales as a reasonably royalty rate.

50. Frank Gaylord has negotiated the right to receive 15-25% of the revenue from sublicensing rights in the work "The Column."

51. Frank Gaylord is entitled to a royalty of at least 10% on merchandise and retail sales of the Stamp, including those stamps that were retained.

52. Frank Gaylord is entitled to reasonable compensation on the sales of stamps that were sold and not retained.

53. **Stipulated Fact 20: The following revenues and costs are associated with the retail goods that featured the Stamp:**

| Product | Revenues | Costs |
| --- | --- | --- |
| **The American Commemorative Panel** | $63,792.25 | $15,990.00 |
| **Cancellation Pages** | $23,360.00 | $2,250.00 |
| **American Commemorative Collection Sheets** | $34,703.50 | $1,195.00 |
| **First Day of Issuance CeremonyProgram** | $2,341.35 | $0.00 |
| **First Day of Issue Covers** | $9,650.25 | $2,580.90 |
| **Cancellation Keepsake (pane of 20stamps with First Day of Issue Cover)** | $36,153.40 | *See NOTE |

| | | |
|---|---:|---:|
| **Lapel Pin** | $25,481.84 | $23,278.00 |
| **Postcard** | $9,407.68 | $5,591.00 |
| **Magnet** | $11,571.51 | $12,051.00 |
| **Framed Art** | $114,457.71 | $68,472.60 |

***NOTE: The parties dispute the Postal Service's costs associated with the Cancellation Keepsake.**

Dated:  May 16, 2008            /s/ Heidi E. Harvey
                                Heidi E. Harvey
                                FISH & RICHARDSON P.C.
                                225 Franklin Street
                                Boston, MA 02110
                                (617) 542-5070
                                (617) 542-8906

                                Attorney for Plaintiff Frank Gaylord

21940331.doc