IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UNITED STATES OF AMERICA;<br><br>        Defendant. | No.: 06-539C |

**SUPPLEMENTAL BRIEF OF PLAINTIFF FRANK GAYLORD ON DAMAGES**

**I.      Summary of Issues to Be Determined On Remand**

The record evidence at trial showed that the Postal Service sold $30MM in stamps bearing the image of "The Column," and related merchandise.  The Federal Circuit has now determined those sales were an infringement of Plaintiff Frank Gaylord's copyright and has remanded the case to this Court for a determination of damages.  *Gaylord v. U.S.,* 595 F.3d 1364, 1381 (2010) ("Op."); Docket ("D.") 74 (Mandate).  The Federal Circuit also affirmed this Court's conclusions that Mr. Gaylord was the sole author of "The Column," and that "The Column" was not an architectural work subject to the AWPA. Op., 595 F.3d at 1376-81.

Plaintiff Frank Gaylord presented evidence at trial and proposed findings and conclusions that damages should be measured by a royalty rate of 10% applied to the base of total stamp and merchandise sales under 28 U.S.C. Section 1498(b).  *See* Plaintiff's Opening Brief After Trial, D. 59, at pages 7-9 (argument) and 36-41 (Plaintiff's Proposed Findings of Fact ("PPF") 105-127).  *See also* Plaintiff's Responding Brief After Trial, D. 62, at pages 30-39.

The Government disputes the model of a reasonable royalty, arguing that Frank Gaylord is limited to the exclusive remedy of a minimum award of $750 in statutory damages. Defendant's Post-Trial Brief, D. 58, at pages 54-56.  In the alternative, the Government attempts to dispute that 10% is an "established rate" or that the rate should be applied to the base of total stamp and merchandise sales. Defendant's Reply to Plaintiff's Post-Trial Brief, D. 61, at pages 15-16.  But significantly, the Government offered no evidence at trial of any other rate or base that should apply in this case and took no position as to what a proper model or measure of damages would be if their "minimum statutory damages" argument were to be rejected as a matter of law.

Gaylord submits, and asks the Court to find and conclude that the Government's statutory interpretation argument that the exclusive remedy for copyright infringement is a *de minimis* award of statutory damages is improper; that a reasonable royalty approach is the proper model for damages in this case of first impression; that both existing licenses and some of the *Georgia-Pacific* factors are relevant considerations;  that consideration of those factors on the record evidence amply support a finding that a rate of 10% is proper; and that the proper base for the royalty calculation is the total of stamp and merchandise sales.

## II. Governing Law of Copyright Damages

The relevant statute is 28 U.S.C. § 1498 (b) (West 2010 Revised Edition) which states that the holder of a copyright that is infringed by the United States is entitled to recovery of

> his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code….

Mr. Gaylord has not located any reported cases from the Court of Federal Claims directly addressing copyright damages under §1498(b).

2

The clause "reasonable and entire compensation" in Section 1498(b) is identical to the language of Section 1498(a) (remedy for patent infringement against the United States) and that language has been interpreted to include a "reasonable royalty." *See Brunswick Corp v. U.S.*, 36 Fed. Cl. 204, 208 (1996), *Wechsberg v. U.S.*, 54 Fed. Cl. 158, 166 (2002), *Decca* Ltd. V. U.S., 640 F.2d 1156, 1162 (Ct.Cl. 1980), cited in Plaintiff's Responding Brief After Trial, D.62, at 35.

The Government argues that Section 1498(b) should be interpreted to limit copyright compensation to a minimum statutory award of $750. Defendant's Post-Trial Brief, D. 58, at pages 54-55. The Government's argument that the phrase "including minimum statutory damages…" sets forth the exclusive remedy for copyright infringement applies a mistaken meaning to the work "including" and would read the words "reasonable and entire compensation" out of the statute. See Plaintiff's Responding Brief After Trial at 36.

There is no reason in the express language of Section 1498(b) or the manner in which it issued in the statute to interpret the language "reasonable and entire compensation" in Section 1498(b) differently from the identical language of Section 1498(a).

An award of a reasonable royalty has been found to be an appropriate measure of actual copyright damages in a case where there has been an unauthorized, infringing use. In *On Davis v. The Gap Inc*., 246 F.3d 152, 165-166 (2d Cir. 2001)(cited in Plaintiff's Responding Brief After Trial at 34), the Court concluded that lost licensing fees constituted "actual damages" under the Copyright Act, 17 U.S.C. § 504:

> If a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner, it seems entirely reasonable to conclude that the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for. We can see no reason why, as an abstract matter, the statutory term "actual damages"

should not cover the owner's failure to obtain the market value of the fee the owner was entitled to charge for such use.

The Government argues that because Mr. Gaylord cannot demonstrate that he lost sales, he is not entitled to damages, misstating Mr. Gaylord's damages position: "…Mr. Gaylord argues that, but for the Postal Service's use of the Alli Photo as part of the Stamp, Mr. Gaylord would have received $3,024,277.20." Defendant's Reply to Plaintiff's Post-Trial Brief, D. 61 at page. 13.  This argument is largely a strawman rebuttal to a claim for "lost profits" damages that Mr. Gaylord has not made. Plaintiff's Responding Brief After Trial, D. 62, at pages 30-35.  Rather, Mr. Gaylord presents a reasonable royalty analysis, which, unlike a lost profits analysis, assumes that the infringing "use" did occur and places a value on the compensation the infringer should pay for that use.  This is settled reasonable royalty law under the Patent Act which provides for "…a reasonable royalty *for the use made of the invention* by the infringer," 35 U.S.C. §284 (emphasis supplied).

It is also hollow for the Postal Service to argue that Mr. Gaylord cannot show lost sales where the bulk of the infringing uses were for postage stamps, over which the Postal Service has an exclusive monopoly.  *See On Davis*, 264 F.3d at 161-172 (the infringing use did not cause copyright owner lost sales but Court found that a lost licensing fee for the use was "actual" damage).

The Federal Circuit remanded for a determination of damages even as it found that the Postal Service's sale of stamps did not" impact the market for derivative works of The Column," Op., 595 F.3d at 1375, essentially laying to rest any further argument by the Government that the lack of lost sales precludes Mr. Gaylord from recovering damages in this case (Id. at 1376):

> Even though the stamp did not harm the market for derivative works, allowing the government to commercially exploit a creative and expressive work will not advance the purposes of copyright in this case.

Plaintiff submits that the sounder interpretation of Section 1498(b) is that a plaintiff may recover a reasonable royalty as damages for copyright infringement because the copyright owner is entitled to "reasonable and entire compensation for such infringement," i.e., the infringer's unauthorized use, and is not precluded from recovering a royalty merely because plaintiff cannot show it lost sales due to the infringer's use.

### III.     Royalty Rate

Plaintiff Gaylord has argued that there is an "established rate" of 10% for the work "The Column." "The Column" had been licensed to others at a rate of 10%, both by Mr. Gaylord and by third parties long prior to the initiation of this litigation. PFF 87-90, 106, 122-127, Plaintiff's Opening Brief After Trial at 8; Plaintiff's Responding Brief After Trial at 38-39.  Furthermore, the Federal Circuit specifically pointed out in its opinion that there were arms-length licensing transactions involving The Column that used a 10% as the royalty rate.  Op. at 1369 (Lecky charged Alli 10%), and 1370 n. 2 (Alli agrees to pay Gaylord 10% in settlement).

A rate that has been used repeatedly for the work at issue is persuasive evidence of an established and reasonable rate. Plaintiff's Responding Brief After Trial at 32.  See also *Boeing Co. v. U.S.*, 80 Fed .Cl. 303, 312-316 (2009), a patent royalty case decided since post-trial briefing here, where this Court held that existing licensing agreements for the infringed work are probative evidence of an appropriate royalty rate, stating (at 315), "the [government] is not entitled to infringe a patent at a cheaper rate than a private infringer."

Gaylord has also pointed to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), which provides an alternate analytical method of the "hypothetical negotiation"

to arrive at a royalty rate, which has been used in determining patent damages under the parallel provision of 28 U.S.C. Section 1498(a).  *See e.g., Wright v. U.S.*, 53 Fed. Cl. 466, 469 (2002).

Plaintiff Gaylord has not previously summarized a complete hypothetical negotiation analysis under *Georgia-Pacific* because, as a patent case, many of the factors do not directly apply to the situation present here.  However, Plaintiff Gaylord has pointed out those factors that do apply and submits that it would be appropriate for the Court to read *Georgia-Pacific* approach as persuasive precedent of factors to be considered.

Plaintiff Gaylord submits that both methodologies – existing licenses and consideration of applicable Georgia-Pacific factors, lead inexorably to the conclusion that a rate of at least 8% (the rate charged by the Postal Service itself for licenses of stamp images) to 10% (the rate Gaylord and third parties have charged for use of the work) is an appropriate royalty rate here.

The Government criticizes some of the licenses cited as not bearing on an "established rate" but offers no model for damages in substitution.  More importantly, the existing licenses certainly are probative of the hypothetical rate that a willing licensor and a willing licensee would agree to and therefore are relevant to the Court's consideration.  *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1159 (6th Cir. 1978)(Markey, C.J.) ("The amount of a reasonable royalty after infringement turns on the facts of each case, as best they may be determined. Among the relevant facts are: 'what plaintiff's property was, to what extent defendant has taken it, its usefulness and commercial value as shown by its advantages over other things and by the extent of its use,' United States Frumentum, 216 F. at 617, and the commercial situation, Egry, 23 F.2d at 443".).

In particular, the Government notes that under one license, the effective rate Mr. Gaylord was being paid was actually 8%,  D. 61, at page 20-21, which is identical to the rate the Postal Service

demanded and was paid by its owns licensees for the stamps, D. 59, PPF 121.  On the other hand, the Government ignores that Mr. Lecky agreed to pay Mr. Alli 10% of net sale in an arm's length agreement, prior to any dispute arising over the copyrights, D. 59, PPF 90, and Mr. Lecky agreed to pay Mr. Gaylord a rate of 15% under the Copyright another negotiated license, D. 59, PPF 124.

The Federal Circuit noted that (in its fair use analysis) that the Postal Service's use of the work was commercial in nature, noting that the Postal Service admitted to at least $17MM in revenue from the sale of stamps" Op. 595 F.3d at 1370 and 1374.   The Postal Service's costs to produce the stamps was $118,412, PPF 112, and the Postal Service admitted that it had no increased overhead costs to produce the stamps,  PPF 113.  Therefore, the Korean War Veterans Memorial Stamp was clearly a profitable endeavor for the Postal Service.  See *Georgia-Pacific,* 318 F.Supp. at 1120 (factor 8: whether the infringer's use was profitable or unprofitable).

The Federal Circuit also noted that the copyrighted work "The Column is the entire subject matter of the stamp." Op., 595 F.3d at 1375.  See *Georgia-Pacific*, 318 F. Supp. at 1120 (factors 10, and 11, nature and extent of the use).

Plaintiff has demonstrated an established rate of 10% royalty for the actual work at issue, Plaintiff's Opening Brief After Trial at 8, and Plaintiff's Responding Brief After Trial at 37-39, and the *Georgia-Pacific* factors that apply also lead to a rate of 8-10% where, as the Federal Circuit noted, the use was the same, the appropriation of the intellectual property was the entire subject matter of the Stamp, and the overall endeavor was commercial and profitable.

### IV. Royalty Base

Since this case was briefed on damages in this Court, the Federal Circuit decided an important case on patent reasonably royalty damages addressing when the "entire market value" of the infringing

7

sales forms a proper base for the royalty calculation.  In *Uniloc v. Microsoft*, --- F.3d ---, 2011 WL 9738 * 22-25 (Fed. Cir. 2010) ("*Uniloc*"), the Federal Circuit held that that the plaintiff seeking a reasonable royalty on all product sales incorporating an invention must show that the market demand for the product is driven by the particular invention.

First, and as noted above, the Federal Circuit specifically observed that the copyrighted work "The Column is the entire subject matter of the stamp." Op., 595 F.3d at 1375.

Second, the evidence at trial showed that demand for commemorative stamps is unquestionably created largely by the stamp image.  *See, e.g.*, PTX 30 (Postal Service's David Faillor is quoted in the article stating that the sale of collected stamps depends on subject matter).

Likewise, the Court will recall the testimony of Mr. Delaney, a Postal Service employee responsible for stamp distribution, who stated that the Korean War Memorial Stamp sold better than an average commemorative stamp (Tr. Day 3, at page 455, lines 17- 456, line 11):

```
17    THE COURT:  A follow-up to your testimony
18    about the Bugs Bunny stamp.  I was wondering, with
19    reference to the production quantity of 86.8 million
20    for the Korean War Veterans Memorial stamp, is that a
21    large or a medium or a small production quantity?
22        THE WITNESS:  For the stamp and the timing,
23    again, you've got to understand it also depends on the
24    timing as to how long we think it's going to be out
25    there.  If it's only going to be out there six months
456
 1    because you're going to have a rate case, as I
 2    mentioned earlier, you're going to make less.
 3        Eighty-six is a pretty decent number for
 4    that type of stamp.  I think the World War II
```

> 5   memorial, we did about 100 million.  So it's in that
> 6   vein.  Patriotic stamps do fairly well.
> 7          My average run for the average commemorative
> 8   is usually around 50 to 60 million, so I did more than
> 9   I normally would.  But it wasn't in the blockbuster
> 10  category, like Bugs Bunny or the Disney stamps are
> 11  right now.

Third, the Federal Circuit also found that the Postal Service's sale of stamps included $5.4MM in "sales to collectors who did not use the stamps to send mail" as well as sales of related non-stamp merchandise bearing the Stamp Image, PPF 117. Op. 595 F.3d at 1370 and 1374. The survey from which these numbers were drawn was the Postal Service's own survey, which it has done quarterly for many years and relies upon directly in guiding its commemorative stamp program. PPF 114. Such direct survey evidence clearly establishes the required market demand under *Uniloc* for the copyrighted work. *Uniloc v. Microsoft*, --- F.3d ---, 2011 WL 9738 *22 (Fed. Cir. 2010).

Finally, in the recent *Boeing* case cited above, this Court held that licensing agreements for the infringed work are also direct evidence of the appropriate royalty base. In that case, the royalty was calculated in existing licenses on a base of total sales. *Boeing,* 80 Fed .Cl. at 316-321.

Here, the evidence showed that all of the agreements licensing the work "The Column" used the total net sales of products incorporating the work as the base for royalty calculations. PFF 89, 106, 122-127. Mr. Gaylord is therefore entitled to compensation for the Postal Service's use of the image on all stamps, both those collected and those that were exchanged for Postal Services, as well as the related merchandise.

## V.     Summary of Royalty Calculation

The Postal Service's sales are as follows, where Sales of "non-retired stamps" represents stamps printed less those retired (PFF 110):

| | |
|---|---|
| Sales of non-retired stamps | $29,912,842.50 (PFF 110, 112) |
| Sales of non-stamp merchandise | $     330,919.49 (PPF 117) |
| Total Sales | $30,243.761.99 |

The reasonable royalty is calculated as follows:

**Royalty @ 10%  =  ($30,243.761.99 x 0.10)  =  $3,024,376.20**

Plaintiff Gaylord requests judgment enter in his favor and against the United States in the amount of $3,024,376.20, plus pre-judgment interest from the date of the Complaint and post-judgment interest, both in amounts to be determined in post-judgment submission.

FISH & RICHARDSON P.C.

Dated:  February 2, 2011

/s/ Heidi E. Harvey
Heidi E. Harvey
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110
Tel:  (617) 542-5070
Fax:  (617) 542-8906
Attorneys for Plaintiff

22567958.doc