IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FRANK GAYLORD,             )
                                       )
          Plaintiff,          )
                                       )
      v.                 )        No. 06-539C
                                       )
THE UNITED STATES,     )        Judge Thomas C. Wheeler
                                       )
          Defendant.     )

## DEFENDANT'S SUPPLEMENTAL BRIEF ON COMPENSATION

TONY WEST
Assistant Attorney General

JOHN J. FARGO
Director

Of Counsel:                 SCOTT BOLDEN
GARY L. HAUSKEN      Senior Trial Counsel
Department of Justice       Commercial Litigation Branch
                              Civil Division
MICHAEL F. KIELY      Department of Justice
United States Postal Service  Washington, DC  20530
                               Telephone:    (202) 307-0262
February 16, 2011        Facsimile:    (202) 307-0345

Attorneys for Defendant the United States

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Reasonable and Entire Compensation under Section 1498(b) Is Analogous
        to Actual Damages under Title 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     This Court Held and the Federal Circuit Affirmed That Plaintiff Was Not Harmed
        by the Postal Service's Use of "The Column" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    Plaintiff's Proof Is Undermined by the Relevant Facts and Legal Authority  . . . . . . . . . 6

        A.      Plaintiff relies on incorrect facts and inadmissible evidence . . . . . . . . . . . . . . . . 7

        B.      On Davis, Boeing, Uniloc and Georgia-Pacific do not support Plaintiff's claim
                for a royalty  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.      Speculation cannot substitute for proof of a reasonable royalty
                or actual damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     Since Plaintiff Was Not Harmed, He May Recover Minimum Statutory
        Damages as Reasonable and Entire Compensation  . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>Cases</u>

Abeshouse v. Ultragraphics, Inc.,
    754 F.2d 467 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Boeing Co. v. United States,
    86 Fed. Cl. 303 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 16

Bouchat v. Baltimore Ravens Football Club, Inc.,
    346 F.3d 514 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Brooktree Corp. v. Advanced Micro Devices, Inc.,
    977 F.2d 1555 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 15

Childress v. Taylor,
    798 F. Supp. 981 (S.D.N.Y.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15-16

Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,
    447 U.S. 102 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Country Road Music, Inc. v. MP3.com, Inc.,
    279 F. Supp. 2d 325 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Data General Corp. v. Grumman Systems Support Corp.,
    36 F.3d 1147 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Garretson v. Clark,
    111 U.S. 120 (1884) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gaylord v. United States,
    595 F.3d 1364 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gaylord v. United States,
    85 Fed. Cl. 59 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 18

Georgia-Pacific Corp. v. U.S. Plywood Corp.,
    318 F. Supp. 1116 (S.D.N.Y. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13-14

Harper & Row Publishers, Inc. v. Nation Enterprises,
    471 U.S. 539 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Leesona v. United States,
   599 F.2d 958 (Ct. Cl. 1979) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Lucent Techs., Inc. v. Gateway, Inc.,
   580 F.3d 1301 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

On Davis v. The Gap, Inc.,
   1999 WL 199005 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

On Davis v. The Gap, Inc.,
   246 F.3d 152 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

PAR Microsystems, Inc. v. Pinnacle Development Corp.,
   995 F. Supp. 658 (N.D.Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Perrin v. United States,
   444 U.S. 37 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Polar Bear Productions, Inc. v. Timex Corp.,
   384 F.3d 700 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ResQNet.com, Inc. v. Lansa, Inc.,
   594 F.3d 860 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Standard Mfg. Co. v. United States,
   42 Fed. Cl. 748 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Steve Altman Photography v. United States,
   18 Cl. Ct. 267 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12

Uniloc USA, Inc. v. Microsoft Corp.,
   — F.3d —, 2011 WL 9738 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

University of Colorado Foundation, Inc. v. American Cyanamid Co.,
   196 F.3d 1366 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wall Data Inc. v. Los Angeles County Sheriff's Dept.,
   447 F.3d 769 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Wechsberg v. United States,
   54 Fed. Cl. 158 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Williams & Wilkins Co. v. United States,
   487 F.2d 1345 (Ct. Cl. 1973), aff'd per curiam, 420 U.S. 376 (1975) . . . . . . . . . . . . . . 3

**Statutes**

17 U.S.C. 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. 1498 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other Authorities**

American Heritage College Dictionary (3d ed. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

S. Rep. No. 1877 (reprinted in 1960 U.S.C.C.A.N. 3444) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK GAYLORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-539C |
| | ) | |
| THE UNITED STATES, | ) | Judge Thomas C. Wheeler |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SUPPLEMENTAL BRIEF ON COMPENSATION

Pursuant to the Court's Order of January 20, 2011, Defendant, the United States ("the government"), hereby respectfully submits its Supplemental Brief on Compensation.  Contrary to Plaintiff's characterization, the government has never argued "that the exclusive remedy for copyright infringement is a *de minimis* award of statutory damages."  Pl. Suppl. Br. at 2; see also Pl. Suppl. Br. at 3.  Rather, the government has consistently maintained that:  (1) "reasonable and entire compensation" for copyright infringement under Section 1498(b) is analogous to actual damages; and (2) where a plaintiff fails to provide a fair measure of reasonable compensation, his recovery is limited to minimum statutory damages.  See, e.g., Def. Pre-Trial Proposed Conclusions of Law at 16-26; Def. Post-Trial Br. at 48-56; Def. Post-Trial Response Br. at 13-17.  In this case, this Court held and the Federal Circuit affirmed that Plaintiff was not harmed by the Postal Service's use of "The Column."  In addition, Plaintiff has failed to cite relevant facts and authority that support his claim for a royalty.  As a result of Plaintiff's failure to meet his burden of proof, his "reasonable and entire compensation" is limited to "minimum statutory damages."  28 U.S.C. § 1498(b).

- 1 -

**ARGUMENT**

I.      **Reasonable and Entire Compensation under Section 1498(b) Is Analogous to Actual Damages under Title 17**

The burden of proving "reasonable and entire compensation" rests with the Plaintiff.  <u>See</u> 28 U.S.C. § 1498(b); <u>see also</u> <u>Wechsberg v. United States</u>, 54 Fed. Cl. 158, 166 (2002).  The first issue that the Court must confront is the proper measure of compensation in a Section 1498(b) case. The legislative history of Section 1498(b), the principle of just compensation, and the substantive interpretation of Title 17 damages demonstrate that reasonable and entire compensation is analogous to actual damages.

Section 1498(b), the sole jurisdictional basis for this lawsuit, invokes the eminent domain principles of the Fifth Amendment by allowing the recovery of "reasonable and entire compensation":

> the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17.

28 U.S.C. § 1498(b).  According to the legislative history for Section 1498(b), "reasonable and entire compensation" is equivalent to just compensation under the Fifth Amendment.  <u>See</u> S. Rep. No. 1877 (<u>reprinted in</u> 1960 U.S.C.C.A.N. 3444, 3445-46) ("extending the provisions of Section 1498" to permit an action to recover "just compensation" for copyright infringements).  The proper focus for "just compensation" under the Fifth Amendment is "what the owner has lost, not what the taker has gained."  <u>Leesona v. United States</u>, 599 F.2d 958, 968-69 (Ct. Cl. 1979) (<em>en banc</em>).

- 2 -

The analysis of actual damages in Title 17 copyright law provides insight with respect to reasonable and entire compensation in Section 1498(b).  This Court has often looked to Title 17 for assistance in interpreting the substantive provisions of Section 1498(b).  See Wechsberg, 54 Fed. Cl. at 162-63; Steve Altman Photography v. United States, 18 Cl. Ct. 267, 279 (1989); Williams & Wilkins Co. v. United States, 487 F.2d 1345, 1350 (Ct. Cl. 1973), aff'd per curiam, 420 U.S. 376 (1975).  Indeed, the unambiguous text of Section 1498(b) directly refers to the minimum statutory damages provision in Title 17.  See 28 U.S.C. § 1498(b) (citing 17 U.S.C. § 504(c)).

Section 504(b) of Title 17 allows two different types of recovery in a non-government copyright action – actual damages and the infringer's profits:

> (b) *Actual damages and profits.* – The copyright owner is entitled to recover [1] the actual damages suffered by him or her as a result of the infringement, and [2] any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

17 U.S.C. § 504(b) (annotations added).  According to the statute and the relevant case law, the recovery of actual damages – as opposed to the infringer's profits – is closely analogous to the recovery of just compensation.  For example, in the On Davis case cited at length by Plaintiff, the Second Circuit noted that actual damages focuses on the owner's loss:

> The award of the infringer's profits examines the facts only from the infringer's point of view.  If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing.  **The award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered** by reason of the infringer's illegal act.

On Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d Cir. 2001) (emphasis added).  Thus, just compensation pursuant to Section 1498(b) is generally equivalent to actual damages pursuant to

Section 504(b) – both focus on the owner's loss, and both seek to compensate the owner for any harm suffered as a direct result of the infringement.  See Leesona, 599 F.2d at 969.

To recover actual damages under Section 504(b), a plaintiff **must** prove:  (1) harm; and (2) proximate cause.  First, a plaintiff may prove harm by establishing a loss in value to the copyrighted work.  See 17 U.S.C. § 504(b) ("the actual damages suffered by [the owner]"); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1579 (Fed. Cir. 1992) (analogizing to copyright law "wherein actual damages may be measured in terms of the diminished market value of the copyrighted work").  Second, a plaintiff must then prove that the defendant proximately caused the loss in value.  See 17 U.S.C. § 504(b) ("the actual damages . . . as a result of the infringement"); Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) ("[I]t is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits . . . a plaintiff in a § 504(b) action must establish this causal connection.").  To put it another way, a plaintiff must prove "that, **but for** the defendant's infringement, the plaintiff would not have suffered the loss."  Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1171 (1st Cir. 1994) (emphasis added).  Similarly, Plaintiff should be required to prove both harm and proximate cause to recover just compensation under Section 1498(b) in this action.

## II.   This Court Held and the Federal Circuit Affirmed That Plaintiff Was Not Harmed by the Postal Service's Use of "The Column"

The Federal Circuit and this Court have made it absolutely clear that Plaintiff was not harmed by the Postal Service's Use of "The Column."  In a key passage, the Federal Circuit upheld this Court's findings of fact relating to harm and causation:

- 4 -

> The Court of Federal Claims found that the stamp caused no harm to either the value of The Column or the market for derivative works. It noted that Mr. Gaylord conceded that the stamp actually increased the value of The Column. The court further determined that the stamp did not impact Mr. Gaylord's prior efforts to market derivative works, and that it was not likely to impact such efforts in the future because the stamp was an inadequate market substitute for The Column . . . .

> We see no clear error in the court's determination that the stamp has not and will not adversely impact Mr. Gaylord's efforts to market derivative works of The Column.

Gaylord v. United States, 595 F.3d 1364, 1375 (Fed. Cir. 2010); see also Gaylord v. United States, 85 Fed. Cl. 59, 70-71 (2008) (discussing at length). Even though these findings of fact were made in the context of the fourth fair use factor, these findings are highly relevant to actual damages and just compensation. For example, the Supreme Court directly linked the fourth fair use factor finding of fact with proof of actual damages. See Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 567-68 (1985) (holding that the fourth factor weighed against fair use because of "clear-cut evidence of actual damage").

Substantively, this Court's affirmed fact findings preclude Plaintiff from asserting either harm or causation. Plaintiff cannot show "actual damages suffered by [the owner]" or "diminished market value" of "The Column" because this Court found that "the Stamp caused no harm either to the value of 'The Column' or to the market for derivative works." 17 U.S.C. § 504(b); Brooktree Corp., 977 F.2d at 1579; Gaylord, 85 Fed. Cl. at 70; see also Gaylord, 595 F.3d at 1375. Plaintiff cannot show that the Stamp proximately caused any harm because Plaintiff admitted that the Postal Service "actually increased the value of 'The Column.'" Gaylord, 85 Fed. Cl. at 70 (citing DX 43 (Response to Request for Admission No. 20)); see also Gaylord, 595 F.3d at 1375. This Court made a number of other fact findings that foreclose any claim to harm or causation:

> [T]he record shows that Mr. Gaylord has made only limited attempts to commercialize his copyright in "The Column." Mr. Gaylord has never sold

> photographs, postcards, magnets, or keychains of "The Column."   Although Mr. Gaylord sold several ten- to twelve-inch miniatures of the soldiers within two or three years after the completion of "The Column," . . . Mr. Gaylord permitted the foundry to destroy the molds used to make miniatures approximately five years ago.

Gaylord, 85 Fed. Cl. at 70-71 (citations omitted).   Other facts presented at trial prove that Plaintiff believed that there was no market for his products, and that Plaintiff's licensing activity was nonexistent during the time period in question.   See DX 25 at FG 618 (Letter); DX 28 at FG 702 (Letter); Tr. at 209:7-16 (Gaylord).

In light of these affirmed findings of fact, Plaintiff essentially concedes that he did not show either harm or proximate cause.   For example, Plaintiff contends that "but for" harm and causation are inapplicable to this case because he "presents a reasonable royalty analysis, which . . . assumes that the infringing 'use' did occur and places a value on the compensation the infringer should pay for that use."   Pl. Supp. Br. at 4.   Copyright law does not allow a plaintiff to recover damages based upon an analysis that simply "assumes" harm and proximate cause in the absence of relevant evidence.   For example, actual damages for copyright infringement cannot be founded on "undue speculation."   Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2d Cir. 1985); see also Childress v. Taylor, 798 F. Supp. 981, 991-92 (S.D.N.Y.1992) (declining to award actual damages because copyright owner's play was a commercial failure and estimates of damages were unduly speculative).

## III.    Plaintiff's Proof Is Undermined by the Relevant Facts and Legal Authority

To be clear, the government acknowledges that an award of a lost license fee as just compensation under Section 1498(b) may be correct in certain situations.   For example, a plaintiff who establishes that he or she suffered the loss of a license fee, as a direct result of (or "but for") the

government's proven infringement, could collect the fee for past infringement under Section 1498(b).  See, e.g., Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 786 (9th Cir. 2006) ("It is not improper . . . to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on undue speculation.").  But the Plaintiff in this case has never presented facts that justify the use of a royalty as just compensation.  In addition, Plaintiff erroneously relies on a number of legal decisions that do not support his claims.  Because Plaintiff's claim for $3,024,376.20 is based upon undue speculation, the Court must conclude that Plaintiff is not entitled to a royalty.

### A.      Plaintiff relies on incorrect facts and inadmissible evidence

As discussed above, this Court and the Federal Circuit concluded that Plaintiff was not harmed by the Postal Service's Use of "The Column."  See *supra* Section II.  Plaintiff ignores this key finding of fact, and instead offers a number of findings that are incorrect.

First, Plaintiff broadly mischaracterizes the licensing agreements in the record.  Plaintiff was a party to only three of the licensing agreements cited in the Supplemental Brief, and none of those agreements support Plaintiff's assertion of "an established and reasonable rate" of 10%.  Pl. Suppl. Br. at 5.[1]  Plaintiff's agreement with World Travel resulted in an effective royalty of only 8%.  See PX 18 at FG 372-73 (World Travel Agreement); Tr. at 323:21-23 (Triano) ("[U]nder our agreement,

_____

[1]    Plaintiff was party to a fourth agreement, but did not cite this agreement in his Supplemental Brief.  Plaintiff's receipt of a solitary payment of $650 from F.J. Designs fails to establish a royalty rate.  See PX 25 (Letter Agreement).  The "royalty" in the agreement was applied against "wholesale sales," rather than "net sales."  See PX 25 at ¶ 1 (Letter Agreement), compare with Pl. Suppl. Br. at 9 ("Here, the evidence showed that all of the agreements . . . used the total net sales of products . . . for royalty calculations.").  Finally, Plaintiff agreed to release F.J. Designs from any "present or future liability," indicating that the one-time payment included a fully paid-up license.  See PX 25 at ¶ 3 (Letter Agreement).

we would, for every dollar they sent us, we would kick back, we would give 20 cents back to World Travel."). Although Plaintiff entered into a copyright licensing agreement with Cooper-Lecky Architects in February of 1995 that provided a 15% royalty, Plaintiff subsequently terminated the agreement eight months later before receiving any royalty payments. See DX 18, 22. Finally, even though Plaintiff's settlement agreement with John Alli specified a 10% royalty for future sales, Plaintiff significantly "waive[d] all [past] claims for damages against Alli." See DX 41 at G2305.[2] At the time of trial, Mr. Alli had not paid Plaintiff any royalties pursuant to the agreement. See Tr. at 387:1-3 (Alli). The remaining two licensing agreements cited by Plaintiff also cannot support an "established and reasonable rate" because Plaintiff was not a party to the agreements. See, e.g., Country Road Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2003) ("[Plaintiff expert's] exclusive reliance on a single license between non-parties for a use different from that made by [defendant] is unreliable."). In addition, these two licensing agreements do not directly cover "The Column," the copyrighted work-in-suit. See, e.g., ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869-71 (Fed. Cir. 2010) (rejecting reliance on unrelated "rebundling" licenses). Finally, with respect to the agreement between Bill Lecky and Mr. Alli, there is almost no evidence in the record of any specific payments under that agreement.[3]

---

[2] Plaintiff has never argued that reasonable compensation from the United States should include a similar waiver of all past claims for damages, despite Plaintiff's reliance on this agreement as "persuasive evidence of an established and reasonable rate." Pl. Suppl. Br. at 5. Even though the relevance of this agreement is disputed, the government would be willing to stipulate to a waiver of all past claims for damages to resolve this litigation.

[3] The only specific payment between Mr. Lecky and Mr. Alli was a $1000 lump sum payment from the United States Army. See, e.g., DX 47 (Alli Income Summary). The probative value of this payment, however, is uncertain because the parties to the agreement disagreed as to whether payment had been made. See Tr. at 392:14-21 (Alli), compare Tr. at 566:17-567:9 (Lecky).

Second, none of the licenses relate to royalties assessed against the sales of commemorative stamps.  The evidence at trial established that the Postal Service has never, and will never, pay a stamp image artist a royalty based upon the face value of a stamp.  See Tr. at 588:1-3 (McCaffrey) ("Q  Has the Postal Service ever paid a royalty on stamp revenue to an artist?  A   Absolutely not.  It's forbidden.").   Terrance McCaffrey, the Postal Service's Manager of Stamp Development, testified that the most the Postal Service would pay an artist was a one-time lump sum of $5000 for use of a preexisting photograph on a stamp, and even that amount was "very unusual."  Tr. at 587:11-25 (McCaffrey).  Mr. Alli received $1500 from the Postal Service for the use of "Real Life" as part of the Stamp image – typical compensation for a preexisting photograph.  See id.; DX 47 (Alli Income Summary); Tr. at 383:11-25 (Alli).  That artists and the Postal Service would agree to such a license fee is reasonable, given that commemorative stamps are a form of pre-payment for delivery services provided by the Postal Service; thus, a stamp's face value is completely independent of the stamp image selected for the stamp.  See generally Tr. at 625:15-19 (Failor).

Third, contrary to Plaintiff's claim, the "record evidence at trial" does not show "that the Postal Service sold $30 [million] in stamps bearing the image of 'The Column' and related merchandise."  Pl. Suppl. Br. at 1, 10.  The parties jointly stipulated that the Postal Service received approximately $17.7 million from sales of the Stamp.  See Stip. Fact ¶ 18.

Finally, Plaintiff makes several other highly suspect factual assertions.  Plaintiff cited Plaintiff's Exhibit No. 30 to support his otherwise unsupported claim "that demand for commemorative stamps is unquestionably created largely by the stamp image."  Pl. Suppl. Br. at 8.  During trial, however, counsel for the government successfully objected to Plaintiff's Exhibit No. 30 as inadmissible hearsay.  See Tr. at 640:7-14 (Bolden).  Counsel for Plaintiff subsequently

"withdr[ew] [her] request to admit Exhibit 30," and the Court admitted the exhibit only to the limited extent David Failor explicitly adopted statements from the exhibit during testimony.  Tr. at 644:24-645:15 (Harvey, Court).  Mr. Failor did not testify in support of Plaintiff's assertion; indeed, he directly contradicted Plaintiff's assertion when he testified that the Stamp was "below average" in terms of popularity, and that the specific Stamp image would not have made "any difference" to "[t]he people who are passionate about that subject."  Tr. at 659:13-20, 660:3-18 (Failor).  Similarly, Plaintiff significantly overreaches when he asserts that "the Korean War Memorial Stamp sold better than an average commemorative stamp."  Pl. Suppl. Br. at 8.  Plaintiff relies upon Chuck Delaney's testimony, but Mr. Delaney was in charge of stamp production and distribution, not stamp sales.  See generally Tr. at 406:12-407:10 (Delaney).  The Court questioned Mr. Delaney about stamp production, not stamp sales.  See Tr. at 455:17-21 ("[W]ith reference to the **production quantity** of 86.8 million . . . is that a large or a medium or a small **production quantity**?") (emphasis added).  Plaintiff's reliance on incorrect facts seriously undermines his claim to a royalty.

### B.   <u>On Davis</u>, <u>Boeing</u>, <u>Uniloc</u> and <u>Georgia-Pacific</u> do not support Plaintiff's claim for a royalty

In general, Plaintiff fundamentally errs by relying primarily on patent law authority to support his claim for a royalty.  "While it may often be useful to look to patent law decisions for guidance in the resolution of questions of copyright law, the inquiry must take into account differences between these aspects of intellectual property."  <u>Wechsberg</u>, 54 Fed. Cl. at 162 (citation omitted).  Plaintiff fails to take any differences between copyright law and patent law into account.  In particular, Plaintiff's assertion of a royalty as just compensation without evidence of the loss of a royalty runs contrary to the purpose of copyright statutory damages, which are designed to provide compensation in the absence of proof of loss.  <u>See</u> 17 U.S.C. § 504(c); 28 U.S.C. § 1498(b)

(incorporating "the minimum statutory damages").  Contrary to Plaintiff's assertion that this is a

"case of first impression," Pl. Supp. Br. at 2, the Court's predecessor previously applied just

compensation principles in a Section 1498(b) decision.  In 1989, Judge Rader of the United States

Claims Court awarded a professional photographer "reasonable compensation of $1500.00."  Steve

Altman Photography, 18 Cl. Ct. at 282.  The court relied upon expert testimony in the record in

concluding that the photographer's request for compensation in the amount of $214.28 per infringed

photograph was reasonable.  Id.

The legal authority cited by Plaintiff directly contradicts Plaintiff's claim to an established

royalty rate.  Significantly,[4] the Second Circuit's decision in On Davis does not support Plaintiff's

claim for a royalty.  On Davis, 246 F.3d at 161.  In On Davis, the court held that Davis, the owner

of copyrighted eyewear, was entitled to recover lost licensing fees from a clothing retailer that had

used an infringing image in advertising.  See id. at 156-61.  Contrary to Plaintiff's interpretation, the

Second Circuit explicitly rejected Davis's unsupported claim for a royalty of $2.5 million.  See id.

at 161("[T]here was no evidence to support Davis's wildly inflated claim of entitlement to $2.5

million.").  According to the district court, Davis had calculated the $2.5 million royalty by

assessing:  (1) a $2.00/image royalty rate against a base of 250,000 infringing reproductions; and

(2) a $1.00/person royalty against a base of 2,000,000 customers.  See On Davis v. The Gap, Inc.,

1999 WL 199005, *4 (S.D.N.Y. 1999).  Unlike this case, however, Davis had presented facts that

justified the use of a lost fee as just compensation.  For example, the plaintiff actively promoted,

marketed, and licensed  his eyewear designs during the time period of the infringing use.  See id.

---

[4] Plaintiff cited only two copyright law decisions for authority (other than the present case) in his Supplemental Brief.  Of those two copyright decisions, only On Davis was substantively discussed.

at 156-57.  In particular, the Second Circuit cited a $50 payment plaintiff had received from a magazine that featured a musician wearing the eyewear:

> On the basis of this evidence, a jury could reasonably find that Davis established a fair market value of at least $50 as a fee for the use of an image of his copyrighted design.  This evidence was sufficiently concrete to support a finding of fair market value of $50 for the type of use made by *Vibe* . . . .  Therefore, to the extent the district court dismissed the case because Davis's evidence of the market value of a license fee was too speculative, we believe this was error.

Id. at 161.  Despite the Second Circuit's characterization of this one-time payment of $50 as a "royalty," its conclusion that an established, non-speculative lost license fee is recoverable as actual damages is consistent with decisions from other circuits and this Court.  See, e.g., Wall Data Inc., 447 F.3d at 786; Steve Altman Photography, 18 Cl. Ct. at 282.  Since Plaintiff's speculative claim to a royalty of roughly $3 million bears more in common with the rejected $2.5 million royalty in On Davis, the Second Circuit's decision cannot support Plaintiff's claim for damages.

The patent decisions cited by Plaintiff are similarly unavailing.  For example, the Boeing court concluded that three of Boeing's licenses and two of Boeing's offers to license constituted persuasive evidence of an established royalty rate.  Boeing Co. v. United States, 86 Fed. Cl. 303, 312-13 (2009).  These Boeing licenses, however, are distinguishable from the licenses cited by Plaintiff.  As discussed above, the licenses cited by Plaintiff:  (1) do not support the claimed royalty rate; (2) do not cover use on a commemorative stamp; and (3) often do not involve Plaintiff.  See supra Section III.A.  In addition, the Boeing court flatly rejected the higher royalty rate suggested by Boeing's expert because the expert relied upon unrelated licenses without justifying their relevance.  See id. at 313-14 (describing the expert's analysis as employing "an extraordinary degree of speculation" and "little more than conjecture").  This Court should similarly reject the royalty rate suggested by Plaintiff.

Nor does Uniloc support Plaintiff's claim to a royalty assessed against the "entire market value" of the Stamp.  Contrary to Plaintiff's claim that the "entire market value" applies where the market demand for a product is merely "driven by" a patented invention, the Federal Circuit quoted the Supreme Court to hold that the rule applies only where "the **entire value** of the whole machine . . . **is properly and legally attributable** to the patented feature."  Uniloc USA, Inc. v. Microsoft Corp., — F.3d —, 2011 WL 9738, *22 (Fed. Cir. 2011) (quoting Garretson v. Clark, 111 U.S. 120, 121 (1884)) (emphasis added).   Plaintiff's misplaced reliance upon Uniloc culminates in his unsupported claim that the entire value of a postage stamp is largely attributable to the stamp image.  See, e.g., Pl. Suppl. Br. at 8 ("[D]emand for commemorative stamps is unquestionably created largely by the stamp image.").  As discussed previously, Plaintiff's claim is false.  See supra Section III.A. at 9-10 (citing Tr. at 659:13-20, 660:3-18 (Failor) (contradicting); Tr. at 640:7-13; 644:24-645:15 (limiting the admissibility of PX 30)).  Indeed, Plaintiff's failure to cite evidence invokes "the danger of admitting consideration of the entire market value of the accused where the . . . component does not create the basis for customer demand."  Uniloc, at *24; see also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1332-33 (Fed. Cir. 2009) (concluding that features other than the asserted invention "account for the overwhelming majority of the consumer demand").

Finally, Plaintiff has cited the Georgia-Pacific factors for determining a reasonable patent royalty a number of times in his briefs.  But even if this Court were to consider these patent-focused factors, these factors are substantively inapplicable to the present case.  See Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Standard Mfg. Co. v. United States, 42 Fed. Cl. 748, 763, 767-71 (1999) (listing and applying the factors in a Section 1498(a) decision).  Out of the sixteen Georgia-Pacific factors, Plaintiff has only cited the eighth as

supporting his case.  See Pl. Post-Trial Response Br. at 31-32.  And with respect to this factor – the established profitability of the Stamp and its commercial success – Plaintiff has offered no valid proof.  See *supra* Section III.A. at 9-10 (citing Tr. at 659:13-20, 660:3-18 (Failor) (contradicting); Tr. at 640:7-13; 644:24-645:15 (limiting the admissibility of PX 30)).  Thus, the government submits that the Georgia-Pacific factors are inapplicable to a copyright infringement case.  Furthermore, to the extent any of the sixteen factors could be reinterpreted to apply to a copyright infringement suit, the factors contradict Plaintiff's cursory analysis.  See, e.g. Georgia-Pacific, 318 F. Supp. at 1120 (factor one considers the "royalties received by the [owner]"; factor three considers the "nature and scope of the license[s]"; factor six considers the "existing value of the [protected work]"; factor thirteen considers the "portion of the realizable profit credited to the [protected work]").  Plaintiff's reliance on inapplicable authority cannot support his claim to a royalty.

## C.     Speculation cannot substitute for proof of a reasonable royalty or actual damages

The relevant case law has repeatedly held that a copyright owner cannot recover actual damages – royalty or otherwise – that are founded on pure speculation.  The Fourth Circuit analyzed a number of copyright damages decisions from the other judicial circuits and concluded that actual damages were not available "with respect to any given revenue stream":

> if either (1) there exists no conceivable connection between the infringement and those revenues; or (2) despite the existence of a conceivable connection, [a plaintiff] offered only speculation as to the existence of a causal link between the infringement and the revenues.

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 520-23 (4th Cir. 2003) (interpreting the On Davis decision as standing for the first category).

- 14 -

The Fourth Circuit's conclusion with respect to actual damages is consistent with the few Federal Circuit decisions that have cited copyright damages.  For example, the Federal Circuit affirmed a district court's conclusion that a plaintiff failed to prove any copyright infringement damages in University of Colorado Foundation, Inc. v. American Cyanamid Co., 196 F.3d 1366 (Fed. Cir. 1999).  There, the Federal Circuit held that the plaintiff bore the burden of proof that defendant's profits were due to copyright infringement, and that plaintiff had failed to meet its burden.  See id. at 1375.  Similarly, in a semiconductor mask work infringement case, the Federal Circuit cited copyright damages and noted the "general principle" that compensation must be based upon proof of harm and causation:

> Applying the **general principle** that the measure of recompense is the **actual loss due to the infringement**, then losses incurred upon announcement by AMD of the infringing activity may be included, **when the losses are found to be reasonably related to the infringing activity** . . . .  We also note the analogy of this portion of the Semiconductor Chip Protection Act to **copyright law**, wherein **actual damages may be measured in terms of the diminished market value of the copyrighted work**.

Brooktree, 977 F.2d at 1579 (emphasis added); see generally id. at 1562-63 (discussing how copyright principles influenced the Semiconductor Chip Protection Act).

Furthermore, the Fourth Circuit's analysis in Bouchat is consistent with the cases cited by the government in its post-trial briefing.  For example, the government cited the Childress case as factually similar to the present case in both its post-trial and response briefs.  See Def. Post-Trial Br. at 49; Def. Post-Trial Response Br. at 14-15.  In Childress, a playwright argued that she was entitled to a 6% royalty of the gross box office sales of a series of plays.  See Childress, 798 F. Supp. at 991-92.  The district court held that the playwright's claim for a royalty was based on a number of "unfounded assumptions," including the mistaken assumption that the defendant would have ever

- 15 -

paid a royalty.  See id. at 991; Tr. at 587:11-588:3 (McCaffrey); see also Boeing, 86 Fed. Cl. at 319 ("[T]he hypothetical agreement [for determining a reasonable royalty] here must be predicated upon what Boeing and either NASA or Lockheed would have agreed.").  The playwright also incorrectly assumed the existence of profits directly attributable to the playwright's contributions and an established royalty rate.  See Childress, 798 F. Supp. at 991-92.  Since Plaintiff's claim for a royalty in this case is based on the same unfounded assumptions, the Court should similarly reject his claim as speculative.

In addition, as noted in the post-trial briefing, Plaintiff's allegations are factually similar to the allegations in PAR Microsystems, Inc. v. Pinnacle Development Corp., 995 F. Supp. 658 (N.D.Tex. 1998).  In that case, the district court entered judgment in favor of the defendants because of a lack of causation – the plaintiff "had no product to sell and did not lose any sales due to [defendant's] infringement."  Id. at 662.  This conclusion equally applies to the case at hand.  In his response brief after trial, however, Plaintiff argued that PAR Microsystems was distinguishable because it was a "lost profits" case as opposed to a reasonable royalty case, and thus, causation does not apply.  See Pl. Post-Trial Response Br. at 34.  Plaintiff's distinction is without merit. Irrespective of whether a plaintiff describes his claim for damages as lost profits, diminished value, lost license, or reasonable royalty, the fundamental question for the court is always the same:  What quantum of compensation would the plaintiff have been entitled to, but for the infringing activity? In a private copyright action, a plaintiff cannot avoid the statutory requirement of proving harm and causation by demanding a "reasonable royalty" as opposed to "lost profits."  Similarly, this Court should prohibit Plaintiff from recovering compensation in the absence of harm and causation.

**IV.     Since Plaintiff Was Not Harmed, He May Recover Minimum Statutory Damages as Reasonable and Entire Compensation**

Congress has provided a remedy for registered copyright owners who cannot (or elect not to) meet their burden of proof with respect to actual damages.  Pursuant to Section 504(c)(1) of Title 17, an owner can recover statutory damages "in a sum of not less than $750 or more than $30,000" for infringement of a single copyrighted work.  17 U.S.C. § 504(c)(1).  Section 1498(b) directly references Section 504(c) by allowing the recovery of "reasonable and entire compensation as damages . . . including the minimum statutory damages as set forth in section 504(c) of title 17." 28 U.S.C. § 1498(b).  By "including the minimum statutory damages" within reasonable and entire compensation, the statute establishes that an owner who proves that the government infringed a copyright can recover at least "minimum statutory damages."  Id.

In this case, since Plaintiff has not met his burden of proof with respect to just compensation in the form of actual damages, Plaintiff's maximum recovery is the minimum statutory damages – $750.  The starting point for interpreting "minimum statutory damages" is the language of the statute itself.  See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  Perrin v. United States, 444 U.S. 37, 42 (1979).  Therefore, under the current statutory limits, the plain meaning of "minimum" is $750 based on the ordinary, common meaning of the word.  See American Heritage College Dictionary 868 (3d ed. 2000) (defining "minimum"); 17 U.S.C. § 504(c)(1) (establishing minimum and maximum statutory damages).[5]

---

[5]  The government's contention that "the minimum statutory damages" is $750 is at odds with the Court of Federal Claims's conclusion in *dicta* in Wechsberg.  See Wechsberg, 54 Fed. Cl.

In his Supplemental Brief, Plaintiff incorrectly asserts that:

> [S]ignificantly, the Government offered no evidence at trial of any other rate or base that should apply in this case and took no position as to what a proper model or measure of damages would be if their "minimum statutory damages" argument were to be rejected as a matter of law.

Pl. Suppl. Br. at 2. Contrary to Plaintiff's assertion, the government explicitly argued that **if** Plaintiff proved that he was entitled to compensation in the form of actual damages, his recovery would be limited to $1500. See Def. Post-Trial Resp. Br. at 16-17. The government's conclusion was directly based upon the record evidence that established the amount the Postal Service paid Mr. Alli for the right to use his photograph. See DX 47 (Alli Income Summary); Tr. at 383:11-25 (Alli). At most, however, this evidence establishes the amount the Postal Service would have been willing to pay for a picture of the KWVM. See also Tr. at 587:11-588:3 (McCaffrey). Critically, the evidence of what the Postal Service would have been willing to pay does not establish that Plaintiff would have been entitled to this amount for his actual damages. See, e.g. Gaylord, 85 Fed. Cl. at 70 ("[Plaintiff] has never sold photographs, postcards, magnets, or keychains of 'The Column.'").

At its core, the thrust of Plaintiff's argument is that $750 cannot constitute "reasonable" compensation. See Pl. Suppl. Br. at 2-3. Yet Plaintiff's argument implicitly contradicts the relevant statutes, which establish that $750 is reasonable compensation in the absence of proof of actual damages. See 17 U.S.C. § 504(c); see also 28 U.S.C. § 1498(b). The government submits that – in a situation where Plaintiff bears the burden of proof, where Plaintiff has offered no relevant proof of harm and causation, and where the government's use actually increased the value of "The

---

at 165-66. For the reasons previously discussed at length in Section V.C. of the government's Post-Trial Brief, this Court should decline to follow Wechsberg. See Def. Post-Trial Br. at 54-56.

Column" – it is the Plaintiff's demand for $3,024,376.20 that does not constitute "reasonable" compensation.

## CONCLUSION

In view of the foregoing, Plaintiff's compensation is limited to $750.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN J. FARGO
Director

                                                 s/Scott Bolden
Of Counsel:                          SCOTT BOLDEN
GARY L. HAUSKEN                       Senior Trial Counsel
Department of Justice                Commercial Litigation Branch
                                     Civil Division
MICHAEL F. KIELY                     Department of Justice
United States Postal Service         Washington, DC  20530
                                     Telephone:    (202) 307-0262
February 16, 2011                    Facsimile:    (202) 307-0345