UNITED STATES
COURT OF FEDERAL CLAIMS

FRANK GAYLORD,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                ) Docket No. 06-539C
                                  )
UNITED STATES,                    )
                                  )
        Defendant.                )


Live Tape

        (The following transcript was transcribed from a

digital recording provided by the United States Court of

Federal Claims to Heritage Reporting Corporation on

July 26, 2012.)


Pages:  1 through 16

Place:  Washington, D.C.

Date:   July 26, 2012


**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

1

          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FRANK GAYLORD,                  )
                                )
          Plaintiff,            )
                                )
v.                              ) Docket No. 06-539C
                                )
UNITED STATES,                  )
                                )
          Defendant.            )

                                   Thursday,
                                   July 26, 2012

                         Live Tape

          (The following transcript was transcribed from a

digital recording provided by the United States Court of

Federal Claims to Heritage Reporting Corporation on

July 26, 2012.)

               BEFORE:  HONORABLE THOMAS C. WHEELER
                        Judge

               APPEARANCES:  (Via Telephone)

               On Behalf of the Plaintiff:

               HEIDI E. HARVEY, Esquire
               Fish & Richardson, P.C.
               One Marina Park Drive
               Boston, Massachusetts  02110
               (617) 542-5070

               On Behalf of Respondent:

               SCOTT D. BOLDEN, Esquire
               U.S. Department of Justice
               Civil Division, Commercial Litigation Branch
               1100 L Street, N.W., 8th Floor
               (202) 307-0262

               On Behalf of the Postal Service:

               MICHAEL KYLIE


                    Heritage Reporting Corporation
                         (202) 628-4888

2

```
 1                    P R O C E E D I N G S

 2                                        (2:35 p.m.)

 3              THE COURT:  Hello, this is Judge Wheeler

 4    again.

 5              MS. HARVEY:  This is Heidi Harvey from Fish

 6    & Richardson.

 7              THE COURT:  Yes.

 8              MR. BOLDEN:  Good afternoon, Your Honor.

 9    This is Scott Bolden with the Department of Justice,

10    and I believe Michael Kylie from the Postal Service is

11    also on the line.

12              MR. KYLIE:  Correct.

13              THE COURT:  Okay.  Well, welcome to all of

14    you.  Thank you for being available this afternoon.

15    We're on the record in the case of Frank Gaylord v.

16    United States, Docket No. 06-539C.  And as you know,

17    the case is before me again on remand from the Federal

18    Circuit, and I wanted to get us all together today to

19    determine how you would like to proceed.  Let me start

20    with Ms. Harvey.

21              MS. HARVEY:  Thank you, Your Honor.  Hello,

22    Mr. Bolden and Mr. Kylie.  Well, we reviewed the

23    opinion of the Federal Circuit carefully and they seem

24    to strongly suggest to me that we should put in some

25    testimony to explain the licenses and explain how the
```

1    licenses and what rates might apply to the different

2    classes of infringing goods that are identified, so I

3    think I'm going to do that, and I would like the

4    opportunity to put in expert testimony on those

5    issues.

6            I've been looking at the calendar and

7    thinking about what's realistic with August being a

8    vacation month for most people.  I was going to

9    suggest that, and I might need clarification from you,

10    Your Honor, as to how you proceed with expert

11    disclosures in your Court, but I was going to suggest

12    that we make an expert disclosure by say, I'm looking

13    at the calendar, September 17.  So that gives us time

14    to retain somebody, prepare a report, but accommodate

15    the vacations that are undoubtedly going to be already

16    scheduled for August.  So, you know, it's about a

17    month, taking into account the fact that people are

18    likely going to be on vacation for a couple weeks in

19    the coming month.

20            THE COURT:  Let me ask you first, we'll get

21    to Mr. Bolden in a second, but, Ms. Harvey, you talked

22    about an expert witness.  Do you expect other

23    witnesses as well?

24            MS. HARVEY:  I don't.  I think I don't

25    expect other witnesses.  I think that the remaining

1    task now is one of putting the evidence together in

2    terms of, you know, what the Federal Circuit has said

3    in the case and the evidence that is already of

4    record.  Of course, an expert may have other resources

5    that they consider as well, and that evidence that

6    they consider might come in as well, but I would

7    presume that it would come in through the expert and

8    not through any other fact witnesses.  I would reserve

9    on that issue.  If the Postal Service wished to

10   present other fact witnesses, you know, then I may do

11   so, but sitting here, I don't expect that there would

12   be additional fact witnesses.

13            THE COURT:  All right.  Mr. Bolden, would

14   you like to comment?

15            MR. BOLDEN:  Sure.  I would say first of all

16   we're in agreement that the record should be reopened,

17   and we would also like expert testimony, but in

18   addition, we would also like some fact discovery as

19   well too.  And in part, that's because the Federal

20   Circuit rightly or wrongly seems to be of the belief

21   that the record on damages is fairly thin, and if you

22   look at their opinion, they talk about three different

23   categories of damages and I don't believe the parties

24   really broke those different categories out at the

25   lower stages.

 1          And with respect to that second category in

 2     particular, it's probably going to require new fact

 3     discovery because the Federal Circuit suggests that

 4     the parties could take a look at whether the number of

 5     retained stamps is greater for this particular stamp

 6     than the average stamp.  And we believe that if the

 7     parties are going to consider that that that's going

 8     to take some additional fact discovery.  And so I

 9     guess what I would counterpropose is that we have

10     perhaps three or four months of fact discovery,

11     followed by two or three months for expert discovery.

12          MS. HARVEY:  Well, I disagree with that.  If

13     I may, Your Honor?  If I may respond?

14          THE COURT:  Yes.  Yes.  Go ahead.

15          MS. HARVEY:  Thank you.  I disagree with

16     reopening discovery generally.  I think that what the

17     Court said was that the record could be reopened.  In

18     other words, additional evidence could be offered.

19     But I didn't see anything in the opinion that suggests

20     that the discovery which was supposedly complete four

21     years ago now should be reopened.

22          And in particular, with respect to the three

23     classes of infringing items, which I'm quoting the

24     opinion now, were, "1) stamps that were used to send

25     mail; 2) unused stamps retained by collectors; and 3)

1    retail goods seeking an image of the stamp", the

2    Plaintiff has treated each of those categories

3    separately at numerous places throughout the record,

4    and I believe that if the Postal Service had had

5    evidence of that, they were bound to have submitted it

6    earlier.

7             I think what really happened here was that

8    the Postal Service took a very narrow and now

9    incorrect position on how damages would work in the

10   case and it chose not to produce additional documents

11   that may help it at this point, and I think it's too

12   late in the day to give them a redo on discovery.  I

13   think that what the Federal Circuit is saying is that

14   additional direct evidence may be reopened if there is

15   additional evidence available to the parties that can

16   be submitted.  But I think it would be extremely

17   unfair to Mr. Gaylord to reopen discovery now that the

18   Postal Service has thought better about the position

19   it took in this case from the beginning.

20             THE COURT:  Mr. Bolden, what kind of

21   discovery do you anticipate?

22             MR. BOLDEN:  Well, in particular, one thing

23   that Mr. Gaylord cited was this stamp survey, which

24   was sort of a snapshot of how the Korean War veterans

25   memorial stamp was retained, you know, several months

1    after it first went on sale, and the single snapshot

2    said that $5.4 million of the stamp was retained.  We

3    don't know what it was retained for, we don't know if

4    people were collecting it for the exact image.

5    Basically all the document said was that $5.4 million

6    of the stamp was retained.  But the parties have not

7    had anything to compare that to as to whether that

8    amount was a high retention rate or a low retention

9    rate.

10            I know Ms. Harvey in the past has cited the

11   testimony of one of the witnesses at trial, saying

12   that there was more produced of that stamp and so she

13   uses that to support her contention that it was a high

14   retention rate.  We on the other hand have cited a

15   different Postal Service witness who said that it was

16   not a popular stamp.

17            But we do have other stamp surveys that show

18   how other stamps, perhaps other comparable

19   commemorative stamps, were retained, and we think that

20   directly addresses that second category of damages,

21   specifically, whether the number of unused stamps is

22   greater for the Korean War veterans stamp than the

23   average stamp issued by the Postal Service.

24            MS. HARVEY:  May I, Your Honor?

25            THE COURT:  Yes.

8

```
 1            MS. HARVEY:  That's the Postal Service's own

 2    survey that's in evidence, and these are other surveys

 3    of theirs, and there's absolutely no explanation as to

 4    why if that was relevant to damages it wasn't produced

 5    to us four years ago.

 6            THE COURT:  Well, I think in fairness,

 7    though, the recent opinion of the Federal Circuit has

 8    brought a certain focus to the three issues that you

 9    all have been discussing.  I think, as we know, in the

10    past, the parties really didn't approach damages in

11    the way suggested by the Federal Circuit, and I think

12    that it would be appropriate and reasonable to allow

13    some discovery for a brief period to try to make sure

14    we have all the relevant information.

15            Let me ask you also, though, whether you

16    think it's possible to settle this case at this point.

17            MS. HARVEY:  May I?

18            THE COURT:  Yes.

19            MS. HARVEY:  Thank you.  We did have a full

20    day mediation under the auspices of the Federal

21    Circuit's Mediation Program before the second appeal

22    was argued.  I think it's probably fair to say that we

23    were conceptually far apart, which meant then that the

24    numbers were far apart.  We are open to it, and when

25    we left that session we made it clear that we were
```

9

1    open.  If the Postal Service felt differently upon

2    reading the briefs or, you know, after oral argument

3    or at any point, we're definitely open to reconvening

4    that, and it might be useful to do so.

5         The only hesitation you're hearing from me

6    is I'm thinking in terms of the schedule if we're

7    going to have discovery or we're going to have expert

8    testimony and we're also going to try to get a

9    mediation session in there, because I'm teaching

10    patent law at Suffolk University Law School this fall

11    and I haven't taught it before and I'm sort of staring

12    down the barrel of a gun of every Tuesday and

13    Thursday, you know, for the next 13 weeks, so I'm just

14    hesitating about when we could work it in, but we are

15    definitely open to it.

16         THE COURT:  Well, you say you were

17    conceptually far apart during a mediation and that was

18    before the Federal Circuit's decision, right?

19         MS. HARVEY:  Right.  I mean, that was really

20    a disagreement on whether royalties applied or not.  I

21    do want to make it clear since there is a transcript

22    being created that we have put forth the royalty

23    approach in this case since the beginning.

24         THE COURT:  Right.

25         MS. HARVEY:  So I think that there was no

1   surprise to the Postal Service that that was the

2   approach we were taking, but obviously, you know, I

3   will defer to the Court's decision on how we should

4   proceed in terms of additional discovery.

5          THE COURT:  Well, Mr. Bolden, now that you

6   have the decision of the Federal Circuit on the

7   damages approach, do you think it would be worthwhile

8   to consider settlement again?

9          MR. BOLDEN:  Yes, Your Honor.  And I think

10  in large part I agree with what Ms. Harvey's summary

11  of the prior mediation was, and then we also had a

12  settlement talk before trial as well too many years

13  ago.  I think it would be helpful for the parties at

14  some point to get back together and at least Ms.

15  Harvey and I can talk about whether there's any sort

16  of common ground we can reach.  If we can't outright

17  settle the case, perhaps we can narrow some of the

18  issues here on remand.  So perhaps, you know, I can

19  speak with her and we can pick out a particular time

20  within the next month or two or, you know, to work

21  around her schedule.  I'm open to that.

22         MS. HARVEY:  I am as well, and I think that

23  in terms of a mediation discussion, that's a little

24  easier perhaps to even schedule it in August because

25  it depends on fewer people than, for instance, an

 1    expert, you know, who's a new party whose schedule has

 2    to be taken into account.  Mr. Bolden and I will,

 3    shall we commit to talk to that, we'll talk to that

 4    separately offline in the next day or two and perhaps

 5    go back to the Federal Circuit's program.  I think

 6    they would have us back into that same program if we

 7    want to do that, or we could do it on our own.  I'll

 8    commit to having a separate discussion with him on

 9    that issue.

10         THE COURT:  All right.  Well, that's great.

11    My thought was, hearing what you've done before, it

12    may not even require involvement of the mediator.  You

13    both know the case, you're both experienced counsel,

14    and maybe it would be possible just to do it

15    yourselves in light of the decision that you now have.

16    Alternatively, you may want to go back to the same

17    mediator you had before who at least would know

18    something about the case and might be able to pick up

19    where he or she left off.  But anyway, that's for you

20    all to decide.

21         I think what we want to do, though, and let

22    me lay out a schedule that I think is reasonable, it's

23    my view that we should allow not four months, but I'm

24    willing to go with a three-month fact discovery

25    period, which Mr. Bolden has requested, so that would,

1      let's see, we're basically at the beginning of August

2      now, so fact discovery until the end of October.

3                And then, Ms. Harvey, let me ask you, how

4      much time would you like after the close of fact

5      discovery?  You know, can you do the disclosure of the

6      expert report within two weeks thereafter or three

7      weeks or a month?  What would you like?

8                MS. HARVEY:  I was going to say 30 days

9      because it's November and there's Thanksgiving in

10     there that will take essentially a week out probably

11     for most people.

12                THE COURT:  Okay.

13                MS. HARVEY:  But I'm sure that any of my

14     additional fact discovery would be largely informed by

15     the experts, so we should be good to go once we have

16     discovery completed.  We should be able to promptly --

17                THE COURT:  Okay.  Yes.  And I should have

18     clarified.  When I said three months for fact

19     discovery, that's discovery by both parties.  You're

20     free to do whatever you like in that regard, Ms.

21     Harvey.

22                MS. HARVEY:  Right.

23                THE COURT:  So then 30 days for Plaintiff's

24     expert takes us to the end of November.

25                And then, Mr. Bolden, do you anticipate

1    having an expert here?  Would you like some time to

2    think about that?

3             MR. BOLDEN:  Yes, Your Honor, we anticipate

4    using expert testimony.

5             THE COURT:  Okay.  Well, then another 30

6    days, would that be good for you?

7             MR. BOLDEN:  That's fine, Your Honor.

8             THE COURT:  So that takes us to the end of

9    the year.  All right.  And then I'll offer you one

10   final 30-day period for depositions if you want to

11   depose experts.  Does that seem reasonable?

12            MR. BOLDEN:  That's reasonable with the

13   government, Your Honor.

14            MS. HARVEY:  Yes, that's fine with me.  I

15   may well decide not to, and if Mr. Bolden decides not

16   to, we could inform you that we have waived that.

17            THE COURT:  Sure.  Okay.  And then what I

18   would like to do in anticipation of setting a trial

19   date, I'm not going to do that today.  I think what

20   I'd like to do instead is to schedule a telephone

21   status conference with you all let me say in mid-

22   November.  It's sort of at an advanced stage but not

23   all the way to completion.  I think you'll have a good

24   idea then of where we might be headed with this case.

25   So at the November conference that we're going to have

14

1     we can set a trial date if it's necessary at that

2     time.  And it would be fairly quick at that point.  I

3     would anticipate, you know, a January or February

4     trial date with you all.  Is that acceptable?

5               MS. HARVEY:  That's an acceptable schedule

6     to me.  I appreciate the consideration of my teaching

7     obligation.

8               MR. BOLDEN:  That's acceptable to the

9     government as well, Your Honor.

10              THE COURT:  All right.  While we're all

11    here, let's just see if we can agree on a time for a

12    conference call.  Let me suggest Wednesday,

13    November 12 at 10 a.m.  Does that work?  I'm sorry.

14    Wednesday, November 14 at 10 a.m.

15              MS. HARVEY:  That works for the Plaintiff.

16              THE COURT:  Mr. Bolden?

17              MR. BOLDEN:  That's fine with me as well,

18    Your Honor.

19              THE COURT:  Okay.  So that's what we'll do.

20    Are there any questions about the schedule we have set

21    up?  We'll put it in a scheduling order for you all

22    and we can go forward in that manner.

23              MS. HARVEY:  Very good.

24              THE COURT:  Okay.  Is there anything else we

25    need to address today?

15

```
 1              MR. BOLDEN:  I have no further issues, Your

 2     Honor.

 3              MS. HARVEY:  Do you want us to report back

 4     if we have had a settlement discussion, or will you

 5     just wait to hear from us in mid-November, Your Honor?

 6              THE COURT:  Well, I think obviously if

 7     you're able to settle the case, let me know right

 8     away.  Other than that, I'll leave it in your hands

 9     and our next communication will be in November.

10              MS. HARVEY:  Very good.

11              THE COURT:  All right.  Thank you very much.

12              ALL:  Thank you, Your Honor.

13              (Whereupon, at 2:53 p.m., the hearing in the

14     above-entitled matter was concluded.)

15     //

16     //

17     //

18     //

19     //

20     //

21     //

22     //

23     //

24     //

25     //
```

16

<u>CERTIFICATE</u>

DOCKET NO.:   06-539C

CASE TITLE:   Frank Gaylord v. U.S.

HEARING DATE:   July 26, 2012


I certify that the foregoing is a true and correct transcript made to the best of our ability from a copy of the official electronic digital recording provided by the United States Court of Federal Claims in the above-entitled matter.



Date:   July 26, 2012

_____

Karen Widlock
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C.   20005-4018