IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD,<br><br>       Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No. 06-539 C<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S STATEMENT OF THE PROPOSED CONCLUSIONS OF LAW**

|  |  |
|---|---|
|  | STUART F. DELERY<br>Acting Assistant Attorney General |
|  | JOHN J. FARGO<br>Director |
| Of Counsel:<br>MICHAEL F. KIELY<br>United States Postal Service | SCOTT BOLDEN<br>Assistant Director<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>Washington, DC  20530 |
| April 12, 2013 | Telephone:   (202) 307-0262<br>Facsimile:    (202) 307-0345 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.  REASONABLE COMPENSATION PURSUANT TO 28 U.S.C. § 1498(b) ......................1

   A.  Proposed Conclusion – Gaylord has failed to meet his burden of proof with respect to compensation for the first two categories of infringing goods ................................4

      1.  Citation to Primary Supporting Authorities ................................................................4

      2.  Discussion ...................................................................................................................4

   B.  Proposed Conclusion – Pursuant to a hypothetical negotiation, Gaylord and the Postal Service would have agreed to a lump-sum payment of no more than $10,000 for use of "The Column" on the Stamp ........................................................................8

      1.  Citation to Primary Supporting Authorities ................................................................8

      2.  Discussion ...................................................................................................................8

   C.  Proposed Conclusion – Gaylord is not entitled to any additional compensation beyond the hypothetically negotiated lump-sum payment of no more than $10,000 with respect to retained Stamps ...............................................................................11

      1.  Citation to Primary Supporting Authorities ..............................................................11

      2.  Discussion .................................................................................................................11

   D.  Proposed Conclusion – Pursuant to a hypothetical negotiation, Gaylord and the Postal Service would have agreed to $26,474 from a running royalty on commercial merchandise featuring an image of the Stamp ....................................................12

      1.  Citation to Primary Supporting Authorities ..............................................................12

      2.  Discussion .................................................................................................................13

    E.    Proposed Conclusion – Assuming a one-time lump-sum royalty as of the date of the hypothetical negotiation, Gaylord is entitled to a delay compensation factor of 19.5% up through July 18, 2013 ...................................................................................................14

        1.    Citation to Primary Supporting Authorities ...............................................................14

        2.    Discussion ...................................................................................................14

CONCLUSION ................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

Bruce v. Weekly World News, Inc.,
   310 F.3d 25 (1st Cir. 2002) .................................................................................................. 10

Cohen v. United States,
   100 Fed. Cl. 461 (2011) ......................................................................................................... 2

Gaylord v. United States,
   678 F.3d 1339 (Fed. Cir. 2012) ..................................................................................... *passim*

Gaylord v. United States,
   98 Fed. Cl. 389 (2011) ....................................................................................................... 3, 9

Georgia-Pacific Corp. v. United States Plywood Corp.,
   318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................................... 8, 9

Hanson v. Alpine Valley Ski Area, Inc.,
   718 F.2d 1075 (Fed. Cir. 1983) .......................................................................................... 5, 14

Hi-Shear Tech. Corp. v. United States,
   356 F.3d 1372 (Fed. Cir. 2004) .............................................................................................. 1

LaserDynamics, Inc. v. Quanta Computer, Inc.,
   694 F.3d 51 (Fed. Cir. 2012) .................................................................................................. 5

Leesona Corp. v. United States,
   599 F.2d 958 (Ct. Cl. 1979) ................................................................................................ 2, 8

Lucent Techs., Inc. v. Gateway, Inc.,
   580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 2, 4, 5

McRoberts Software, Inc. v. Media 100, Inc.,
   329 F.3d 557 (7th Cir. 2003) .................................................................................................. 2

On Davis v. The Gap, Inc.,
   246 F.3d 152 (2d Cir. 2001) ........................................................................................ 2, 8, 10

ResQNet.com, Inc. v. Lansa,
   594 F.3d 860 (Fed. Cir. 2010) ............................................................................................ 4, 5

SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,
 926 F.2d 1161 (Fed. Cir. 1991) .......................................................................................... 2

Stickle v. Heublein, Inc.,
 716 F.2d 1550 (Fed. Cir. 1983) .......................................................................................... 3

Uniloc USA, Inc. v. Microsoft Corp.,
 632 F.3d 1292 (Fed. Cir. 2011) ................................................................................... 4, 5, 6

Waite v. United States,
 282 U.S. 508 (1931) .......................................................................................................... 14

Wall Data Inc. v. Los Angeles County Sheriff's Dept.,
 447 F.3d 769 (9th Cir. 2006) .............................................................................................. 2

Wechsberg v. United States,
 54 Fed. Cl. 158 (2002) ....................................................................................................... 2

Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,
 609 F.3d 1308 (Fed. Cir. 2010) ....................................................................................... 4, 5

**Statutes**

17 U.S.C. § 504 ............................................................................................................... 2, 4, 8

28 U.S.C. § 1498 ................................................................................................................ *passim*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD,<br><br>        Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>        Defendant. | No. 06-539 C<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S STATEMENT OF THE
PROPOSED CONCLUSIONS OF LAW ON REMAND**

Pursuant to the Court's Order of November 14, 2012, Defendant, the United States ("the government"), hereby respectfully submits its Statement of the Proposed Conclusions of Law on Remand.

A decision on compensation is likely to contain a mix of findings of fact and conclusions of law. See generally Hi-Shear Tech. Corp. v. United States, 356 F.3d 1372, 1377-78 (Fed. Cir. 2004) (identifying the legal standard on appeal for "factual findings" and "construction[s] of the law" for "a damages award by the Court of Federal Claims"). The Federal Circuit discussed the legal framework for an award of reasonable compensation in this case in its decision dated May 14, 2012. See Gaylord v. United States, 678 F.3d 1339, 1342-45 (Fed. Cir. 2012). Accordingly, this Statement identifies the government's proposed conclusions relating to compensation by applying the proposed findings of fact to the legal framework identified by the Federal Circuit.

I.  **REASONABLE COMPENSATION PURSUANT TO 28 U.S.C. § 1498(b)**

Section 1498(b) of Title 28 provides that where the government has infringed a copyright, it shall pay "reasonable . . . compensation" to the copyright owner. Reasonable

compensation pursuant to Section 1498(b) is akin to just compensation under the Fifth Amendment.  See Gaylord, 678 F.3d at 1343 (citing Leesona Corp. v. United States, 599 F.2d 958, 968-69 (Ct. Cl. 1979)).  The methods of determining "actual damages" pursuant to Section 504(b) of Title 17 can be used to determine reasonable compensation for the taking of "what is essentially a compulsory, non-exclusive [copyright] license."  Id.

Plaintiff, Frank Gaylord ("Gaylord"), bears the burden of proof with respect to the quantum of reasonable compensation.  See Cohen v. United States, 100 Fed. Cl. 461, 478-79 (2011); Wechsberg v. United States, 54 Fed. Cl. 158, 166 (2002) ("A recovery of 'reasonable and entire compensation' [under 28 U.S.C. § 1498(b)] suggests that the burden of proof lies with Plaintiff."); see also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009) (with respect to a hypothetical negotiation in context of patent infringement, "[t]he burden of proving damages falls on the patentee"); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991) ("the amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence").

A lost license fee is recoverable as actual damages pursuant to Section 504(b) of Title 17, but the lost license fee cannot be "based on undue speculation."  On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001); Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 786 (9th Cir. 2006); McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003).  Similarly, the Federal Circuit has repeatedly held that hypothetical royalty awards for patent infringement must be supported by substantial evidence.  See Lucent, 580 F.3d at 1335 (vacating a jury's damage award as "based mainly on speculation or guesswork," rather than "supported by substantial evidence").  Furthermore, any license emerging from a hypothetical negotiation must be one that would be considered reasonable by the relevant industry.  See

Stickle v. Heublein, Inc., 716 F.2d 1550, 1561-62 (Fed. Cir. 1983).  In this case, this Court and the Federal Circuit have each concluded that Gaylord can recover the fair market value of a license based on a hypothetical, arms-length negotiation between the parties.  See Gaylord v. United States, 98 Fed. Cl. 389, 392 (2011); Gaylord, 678 F.3d at 1343 ("When, as in this case, the plaintiff cannot show lost sales, lost opportunities to license, or diminution in the value of the copyright, many circuits award actual damages based on the fair market value of a license covering the defendant's use.") (citations omitted).  The Federal Circuit suggested that the Court consider whether different license fees are appropriate for "three categories of infringing goods":

> (1) stamps used to send mail; (2) unused stamps purchased by collectors; and (3) commercial merchandise featuring an image of the stamp.

Gaylord, 678 F.3d at 1344-45.

In this case, Gaylord asserts that he is entitled to a running royalty of 10% assessed against the retail sales of each of the three categories of infringing goods.  As described in Section I.A. of this Statement, the government contends that Gaylord has not met his burden of proof with respect to his running royalty theory for the first two categories of infringing goods.  Instead, the government contends that Gaylord is entitled to a lump-sum royalty of no more than $10,000 for those two categories.  The government stipulates, however, that Gaylord is entitled to a running royalty of 8% for the commercial merchandise featuring an image of the 2003 Korean War Veterans Memorial stamp ("the Stamp").  Finally, assuming a one-time lump-sum royalty as of the date of the hypothetical negotiation, Gaylord is entitled to a delay compensation factor of 19.5% from July 27, 2003 through July 18, 2013.

**A. Proposed Conclusion – Gaylord has failed to meet his burden of proof with respect to compensation for the first two categories of infringing goods**

*1. Citation to Primary Supporting Authorities*

28 U.S.C. § 1498(b)

17 U.S.C. § 504(b)

Gaylord v. United States, 678 F.3d 1339 (Fed. Cir. 2012)

Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1316-17 (Fed. Cir. 2011)

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009)

*2. Discussion*

Gaylord has failed to meet his burden of proof with respect to his running royalty theory of compensation with respect to the first two categories of infringing goods. His failure to meet his burden is based upon his misplaced reliance upon: (1) agreements that are not comparable to the hypothetical negotiation in this case; (2) the entire market value rule; and (3) excludable expert testimony.

First, the Federal Circuit has repeatedly held that a plaintiff cannot support its claim of a reasonable royalty by relying on license agreements that are "radically different from the hypothetical agreement under consideration." Lucent, 580 F.3d at 1327; see also Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1316-17 (Fed. Cir. 2011); ResQNet.com, Inc. v. Lansa, 594 F.3d 860, 870-72 (Fed. Cir. 2010); Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1319-21 (Fed. Cir. 2010). None of Gaylord's agreements are comparable to the first two categories of infringing goods – used stamps and retained stamps.[1] As shown in Defendant's Statement of the Relevant Contract Clauses and Regulations on

---

[1] Gaylord's theory of recovery is flawed to the extent that he exclusively relies on his subjective interpretations of his incomparable license agreements. See Gaylord, 678 F.3d at 1343 (holding that hypothetical negotiations should not be limited "to only one side of the negotiating table").

Remand, Gaylord was party to only four agreements in the record. None of the four agreements concerned goods similar to commemorative stamps. None of the four resulted in running royalties to Gaylord greater than $2,500. Two of the four agreements resulted in absolutely zero royalties to Gaylord, and the royalties received pursuant to the other two agreements are more akin to small lump-sum payments. Two of the four agreements cannot be considered evidence of an established royalty because they were negotiated after litigation was threatened or initiated. See Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) ("[S]ince the offers were made after the infringement had begun and litigation was threatened or probable, their terms should not be considered evidence of an established royalty."). Thus, Gaylord cannot rely upon these agreements to satisfy his burden of proving entitlement to a running royalty of 10% assessed against the first two categories of infringing goods. See Uniloc, 632 F.3d at 1317 ("The meaning of [Lucent, ResQNet, and Wordtech] is clear: there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case.").

Second, Gaylord's running royalty theory improperly assesses compensation based upon the sale of all of the printed accused stamps as the royalty base. Gaylord's approach is directly contradicted by the Federal Circuit's entire market value rule, which holds that patentees may not calculate damages based upon sales of a multi-component product unless the patentee shows that the demand for the entire product is attributable to the patented feature. See LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the [infringing multi-component product]."); see also Lucent, 580 F.3d at 1332-33; Uniloc, 632 F.3d at 1318-19. The Stamp is akin to a multi-component product because it is a combination of

expressive elements contributed by the Postal Service, John Alli ("Alli"), and Gaylord.  Gaylord cannot prove that the Postal Service's use of his copyrighted work, as compared to any other image, caused the sales of the Stamp.

Finally, Gaylord has not met his burden of proof to the extent that he relies upon irrelevant and excludable expert testimony.[2]  See generally Uniloc, 632 F.3d at 1315-16 ("If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.").  During expert discovery, Gaylord retained Joseph F. Faris ("Faris") to present expert testimony on compensation.  Faris's conclusions, however, are completely irrelevant to:  (1) Gaylord's running royalty theory; and (2) the Federal Circuit's suggested framework in this case.  In his six-page expert report, Faris ultimately concludes that the profit margin of the retained stamps is somewhere between 52 and 99%.  This conclusion is irrelevant to Gaylord's theory of entitlement to a running royalty of 10% assessed against stamp revenues, as opposed to stamp "profits."  During his deposition, Faris admitted that he had no expert opinions with respect to each of the compensation issues identified by the Federal Circuit:

> Q.  Did you attempt to compare the retention of the Korean War Veterans Memorial stamp with the retention of any other commemorative stamp?
>
> A.  No, sir.
>
> Q.  So you have no opinion as to whether this stamp was retained differently than other commemorative stamps?
>
> A.  I have no opinion, sir.
>
> Q.  Do you have any opinion as to whether Mr. Gaylord's compensation should take the form of a lump-sum payment or an ongoing royalty?
>
> A.  No opinion, sir.

---

[2] The government intends to file a motion *in limine* to exclude this expert testimony as soon as possible.

Q. If an ongoing royalty rate is used, do you have any sort of opinion as to what rate should be applied?

A. No, sir.

Q. [First category of infringing goods]  Do you have any opinion with respect to the proper amount of compensation owed to Mr. Gaylord for stamps that were actually used by customers to send mail?

A. No, sir.

Q. [Second category of infringing goods]  Do you have any opinion with respect to the proper amount of compensation owed to Mr. Gaylord for stamps that were unused and retained by collectors?

A. No, sir.

Q. [Third category of infringing goods]  Do you have any opinion with respect to the proper amount of compensation owed to Mr. Gaylord for commercial merchandise featuring the stamp?

A. No, sir.

Q. Do you have any opinion with respect to the amount of prejudgment interest that should be applied in this case?

MS. HARVEY: Objection.

A. No, sir.

Q. Do you have any sort of opinion regarding what sort of license fee would be applied in a willing-buyer/willing-seller hypothetical situation?

A. Can you repeat that, please?

**Q. Do you have any opinion regarding what sort of license fee would be applied in this situation in a hypothetical negotiation involving a willing buyer and a willing seller?**

**A. In this situation?**

**Q. Yes.**

**A. No, sir.**

Faris Dep. at 67:17-69:14 (annotations and emphasis added). Faris's statements were unequivocal. Thus, the Court should conclude that Gaylord has not met his burden to the extent he attempts to rely upon irrelevant expert testimony.

**B. Proposed Conclusion – Pursuant to a hypothetical negotiation, Gaylord and the Postal Service would have agreed to a lump-sum payment of no more than $10,000 for use of "The Column" on the Stamp**

*1. Citation to Primary Supporting Authorities*

28 U.S.C. § 1498(b)

17 U.S.C. § 504(b)

Gaylord v. United States, 678 F.3d 1339 (Fed. Cir. 2012)

Leesona Corp. v. United States, 599 F.2d 958, 968-69 (Ct. Cl. 1979)

Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)

*2. Discussion*

As noted previously, Section 1498(b) of Title 28, the sole jurisdictional basis for this lawsuit, provides that where the government has infringed a copyright, it shall pay "reasonable . . . compensation" to the copyright owner. Reasonable compensation pursuant to Section 1498(b) is akin to just compensation under the Fifth Amendment. See Gaylord, 678 F.3d at 1343 (citing Leesona, 599 F.2d at 968-69). The proper focus is "what the owner has lost, not what the taker has gained." Leesona, 599 F.2d at 969; Gaylord, 678 F.3d at 1343 ("This [Leesona] analysis applies with equal force in the § 1498(b) context."); see also On Davis, 246 F.3d at 166 ("The question is not what the owner would have charged, but rather what is the fair market value.").

With respect to the first two categories of infringing goods, the evidence and the expert testimony[3] will establish that Gaylord lost, at most, $10,000 – the fair market value of a non-exclusive license covering the Postal Service's use of "The Column" in a commemorative stamp. To determine the amount of a reasonable royalty, experts and courts often consider three different valuation methods: (1) the market-based approach; (2) the income-based approach; and (3) the cost-based approach. Each of these three approaches support the conclusion that Gaylord and the Postal Service would have hypothetically agreed to a lump-sum payment of $10,000 or less to use "The Column" in a commemorative stamp. This conclusion is also supported upon consideration of the fifteen factors identified in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971).

The trial record already contains a great deal of evidence and testimony regarding the Postal Service's past licensing practices with other artists. For example, in the 2002 agreement negotiated between the Postal Service and Alli, the Postal Service paid Alli $1,500 for the right to use his photograph in a commemorative stamp. See Gaylord, 98 Fed. Cl. at 392 ("[T]he Postal Service paid Mr. Alli . . . $1,500."); see also Tr. at 382:23-384:16. Terrence McCaffrey ("McCaffrey"), the Postal Service's former Manager of Stamp Development testified that the Postal Service and other artists had typically agreed to compensation "around two to three thousand dollars," with $5,000 being the highest negotiated amount for the right to use a preexisting image on a stamp. See Tr. at 587:1-588:3. The government will introduce additional licenses and testimony regarding similar negotiations. See Defendant's Exhibit List on Remand.

---

[3] The government intends to offer expert testimony with respect to these two categories of infringing goods. As noted in the deposition transcript excerpt in Section I.A.2., Gaylord's damages expert has no opinion with respect to, *inter alia*, these two categories.

The evidence – including Alli and Gaylord's statements – also shows that other tangible and intangible benefits flowed to artists whose works were featured on commemorative stamps. See Tr. at 384:1-16; DX 43.

The trial record, however, contained very little supporting evidence and testimony regarding Gaylord's past licensing agreements. As noted above, Gaylord was party to only four agreements in the record, and none of the agreements is comparable to a license for use on a commemorative stamp. See generally Defendant's Statement of the Relevant Contract Clauses and Regulations on Remand, Section I. Gaylord's only license agreement negotiated without a threat of litigation relating to use of "The Column" on commercial merchandise resulted in only $2,446.93 in royalty payments; and that license expired more than seven years before the Postal Service issued the Stamp. See PX 18; DX 27; DX 46. Gaylord is not expected to introduce any new license agreements or testimony regarding his past licensing agreements. Considered as a whole, the record strongly suggests that Gaylord would have readily agreed to provide the Postal Service with a license to use "The Column" on a commemorative stamp for a lump-sum payment of $10,000, or less.

A lump-sum royalty is far more appropriate than a running royalty for at least four important reasons. First, in connection with the license agreements discussed above, a lump-sum royalty (including, in some situations, $0) was used far more often and successfully by the relevant parties. Second, previous courts who have considered copyright damages in similar contexts have awarded lump-sum royalties as opposed to running royalties. See Bruce v. Weekly World News, Inc., 310 F.3d 25, 29-30 (1st Cir. 2002); see also On Davis, 246 F.3d at 161 (rejecting plaintiff's claim for a $2.5 million running royalty, but holding that a jury could reasonably find a fair market value of a $50 lump-sum royalty). Third, the parties likely would

have preferred a lump sum royalty as opposed to a running royalty. The recordkeeping required for a running royalty would have been onerous for both parties for tens of millions of 37¢ stamps that were sold by the Postal Service for less than two years. Finally, and most importantly, the retail value of a stamp has nothing to do with the image on the face of the stamp. A postage stamp is essentially a pre-paid voucher for the Postal Service's worldwide delivery services. See, e.g., Tr. at 625:15-19, 649:2-8. As such, the stamp's value is primarily attributable to its ability to send mail. Thus, the retail value of a stamp cannot be used as a royalty base with respect to its image.

### C. Proposed Conclusion – Gaylord is not entitled to any additional compensation beyond the hypothetically negotiated lump-sum payment of no more than $10,000 with respect to retained Stamps

#### 1. Citation to Primary Supporting Authorities

See Section I.B.1.

#### 2. Discussion

The lump-sum payment of $10,000 or less accurately reflects the fair market value of a non-exclusive license covering the Postal Service's use of "The Column" in a commemorative stamp – whether it is used or retained. See Gaylord, 678 F.3d at 1345 (recognizing "the possibility that a one-time, paid-up license accurately reflects the fair market value of a license for both the used and unused stamps"). When people collect stamps, the Postal Service receives revenues from the sale of those stamps without immediately paying the cost of providing corresponding delivery services. People, however, retain stamps for any number of reasons. See, e.g., id. at 1345 ("Collectors may retain stamps for any number of reasons, including a preference for the image itself or a desire to obtain a particular stamp to complete a collection."). Despite counsel for Gaylord's arguments on appeal that people collected the Stamp in greater

-11-

than average numbers because of its image,[4] there is no evidence that anyone actually retained the Stamp because of Gaylord's copyrighted expression.

In fact, the evidence directly contradicts these assertions. The evidence and expert testimony will demonstrate that people retained the Stamp less than the average commemorative: (1) military stamp; (2) 2003 stamp; and (3) stamps as a whole. The Stamp's below average performance strongly suggests that people did not retain the Stamp because of Gaylord's copyrighted expression.

In addition, the evidence will show that the three-month retention figures cited by Gaylord significantly overestimate the long-term retention of commemorative stamps. A retained stamp can be exchanged for Postal Service delivery services at any time. As determined by studies performed on behalf of the Postal Service in 2010 and 2011, the long-term retention of a commemorative stamp is approximately half of the three-month retention of the same stamp.

Ultimately, the evidence does not demonstrate any demand for "The Column" on a retained stamp. As a result, the lump-sum payment of no more than $10,000 accurately reflects the fair market value of a non-exclusive license covering the Postal Service's use of "The Column" in a commemorative stamp – whether it is used or retained.

**D. Proposed Conclusion – Pursuant to a hypothetical negotiation, Gaylord and the Postal Service would have agreed to $26,474 from a running royalty on commercial merchandise featuring an image of the Stamp**

   *1. Citation to Primary Supporting Authorities*

   See Section I.B.1.

---

[4] See, e.g., Oral Argument at 3:43-6:29, Gaylord, 678 F.3d 1339, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2011-5097.mp3.

*2. Discussion*

The Federal Circuit strongly suggested that "an ongoing royalty appears to be appropriate" with respect to the commercial merchandise featuring an image of the Stamp. Gaylord, 678 F.3d at 1345. Accordingly, the government concedes that Gaylord is entitled to reasonable compensation in the form of a percentage royalty assessed against the Postal Service's revenues for the commercial merchandise featuring an image of the Stamp. The parties previously stipulated that the Postal Service received $330,919 in revenues from the sale of commercial merchandise that featured an image of the Stamp (or the Stamp itself). See Stip. Fact ¶¶ 20, 22. The only dispute is whether an 8% royalty should apply against the commercial merchandise revenues, as the government contends; or whether a 10% royalty should apply against the same, as Gaylord contends. Neither party is offering expert testimony with respect to this issue.

The commercial merchandise licenses and agreements in the record strongly suggest that an 8% royalty is more appropriate than a 10% royalty. Gaylord had only one license agreement relating to use of "The Column" on commercial merchandise outside of the context of threatened litigation. See PX 18. The license agreement was structured so that he effectively received an 8% royalty[5] of the T-shirt and statue revenues featuring "The Column." See id. The Postal Service's commercial merchandise agreements with third-parties also used an 8% royalty. See Stip. Fact ¶ 19.

The two agreements involving Gaylord that he is likely to cite in support of a 10% royalty rate should not be considered evidence of an established royalty. Both agreements were

---

[5] While Gaylord's agreement with KWVMDF / World Travel nominally uses a 10% royalty, see PX 18, the effective royalty of the agreement was 8%. See id.; Tr. at 323:16-23 ("[U]nder our agreement, we would, for every dollar they sent us, we would kick back, we would give 20 cents back to World Travel.")

negotiated after litigation was threatened or initiated.  See Hanson, 718 F.2d at 1078-79 ("[S]ince the offers were made after the infringement had begun and litigation was threatened or probable, their terms should not be considered evidence of an established royalty.").  One agreement was structured for the payment of a nominal $650.  See PX 25.  The other agreement "waive[d] all [past] claims for damages."  DX 41.

Accordingly, the Court should conclude that Gaylord is entitled to an 8% royalty assessed against the commercial merchandise revenues.  Since the parties have stipulated the amount of commercial merchandise revenues, Gaylord's compensation for this category is $26,474.

**E. Proposed Conclusion – Assuming a one-time lump-sum royalty as of the date of the hypothetical negotiation, Gaylord is entitled to a delay compensation factor of 19.5% up through July 18, 2013**

*1. Citation to Primary Supporting Authorities*

28 U.S.C. § 1498(b)

Gaylord v. United States, 678 F.3d 1339 (Fed. Cir. 2012)

Waite v. United States, 282 U.S. 508 (1931)

*2. Discussion*

Delay compensation is awardable as part of "reasonable and entire compensation" under Section 1498(b).  See Gaylord, 678 F.3d at 1345; see also Waite v. United States, 282 U.S. 508, 508-09 (1931).  The parties have jointly stipulated that the delay compensation factor for sales of the Stamp and related merchandise is 19.5% through July 17, 2013.  See Stipulation (Docket No. 97).

-14-

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Court award reasonable compensation in accordance with the government's proposed findings of fact and conclusions of law.

                                      Respectfully submitted,

                                      STUART F. DELERY
                                      Acting Assistant Attorney General

                                      JOHN J. FARGO
                                      Director

                                       s/Scott Bolden

Of Counsel:                           SCOTT BOLDEN
MICHAEL F. KIELY              Assistant Director
United States Postal Service      Commercial Litigation Branch
                                      Civil Division
                                      Department of Justice
                                      Washington, DC  20530
April 12, 2013                     Telephone:    (202) 307-0262
                                      Facsimile:    (202) 307-0345