IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD,<br><br>       Plaintiff,<br><br>  v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No.: 06-539C<br><br>Judge Thomas C. Wheeler |

**PLAINTIFF'S MEMORANDUM OF SUPPLEMENTAL PROPOSED CONCLUSIONS OF LAW**

I. Prior Proceedings

Plaintiff relies for its proposed conclusions of law on Plaintiff's Statement of the Proposed Conclusions of Law (D.39), Nos. 10-13, filed June 6, 2008, Plaintiff's Opening Brief After Trial (D.59), filed August 20, 2008, pages 7-9, Plaintiff's Supplemental Brief on Compensation (D.77), filed February 2, 2011, and the additional proposed conclusions set forth in Section III, below, which address the analysis of the Court of Appeals in its most recent remand decision.

II. Prejudgment Interest

The Court of Appeals held that plaintiff was entitled to prejudgment interest as part of "reasonable and entire compensation." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56, 76 L. Ed. 2d 211, 103 S. Ct. 2058 (1983)(Prejudgment interest compensates the injured party for the loss of the use of money he would otherwise have had."); *Waite v. United States*, 282 U.S. 508, 509, 75 L. Ed. 494, 51 S. Ct. 227 (1931).

The parties have reached a stipulation on the calculation of prejudgment interest, D. 97, filed April 12, 2012, which obviates the need for presentation or consideration of evidence of applicable rates, timing of infringing activities, compounding and the like.

III. Supplemental Conclusions of Law

A. Law of the Case

The parties have stipulated that the hypothetical negotiation in this case took place on July 27, 2003 (D.98, filed April 12, 2012). In the context of a hypothetical negotiation, the Court must take the following as established as law of the case (*Gaylord v. U.S.,* 595 F.3d 1364 (Fed. Cir. 2010); *Gaylord v. U.S.*, 678 F.3d 1339 (Fed. Cir. 2012)):

(1) Frank Gaylord is the sole author and owner of the copyrightable subject matter consisting of the 19 sculptural figures known as "The Column;"

(2) Frank Gaylord's copyrights in "The Column," are valid and subsisting and in full force and effect;

(3) The work "The Column" is the entire subject matter of the KWVM Stamp;

(4) Each KWVM Stamp and each item of related KWVM merchandise is an adjudicated infringement of Mr. Gaylord's copyright in "The Column," for which Gaylord is entitled to "reasonable and entire compensation" under 28 U.S.C. Section 1498(b);

(5) The fair market value of a lost license fee for defendant's adjudicated infringing sales constitutes "actual damages" pursuant to 17 U.S.C. Section 504(a)-(b);

(6) The value of the lost license covering defendant's adjudicated infringing sales should be measured by a hypothetical negotiation between a willing licensor and a willing licensee at the time of infringement;

(7) Defendant's adjudicated infringing sales can be broken down into three categories: retail goods, collected stamps, and stamps used as postage.

B.  The Book of Wisdom

In the context of a hypothetical negotiation, the parties know all the relevant information regarding sales, markets, and the parties' relationships and policies at the time of adjudication pursuant to the so-called "Book of Wisdom" as set forth in *Fromson v Western Litho Plate and Supply Co*., 853 F.2d 1568, 1575-76  (Fed. Cir. 1988); *Wright v. U.S*., 53 Fed.Cl. 466. 469 (2002).  Here that Book of Wisdom includes:

(1) That the work at issue is "The Column," a monumental work of sculpture, not a photograph of the "The Column;"

(2) That Mr. Alli was an amateur photographer who created the photograph of "The Column" over several visits to the monument for a private, noncommercial purpose, while Mr. Gaylord was a professional sculptor of national reputation, who sculpts as his sole livelihood and created "The Column," as his sole professional endeavor over five years;

(3) That Mr. Gaylord had already once been engaged in a contentious copyright dispute with CLA, the Government's agent, regarding ownership of his copyrights in "The Column" and had prevailed in that dispute by not relinquishing his copyrights as part of the commission;

(4) That Mr. Gaylord's commission fee was $775,000.00, which provides a measure of the value of the work, expressly did not include any rights in the copyrights;

(5) That the Postal Service did not seek out actual photographs of the Korean War that it presumably could have used without fee, but chose to use an image of "The Column" because it wanted to depict the "The Column" on the stamp, even though it knew it would have to obtain the rights to use it;

(6) That the Postal Service was engaging in commercial activity that would use the entirety of the work "The Column" and that would not depict any other work; see *Georgia-Pacific*, 318 F. Supp. at 1120 (factors 10, and 11, nature and extent of the use);

(7) That the Postal Service knew that it would sell 80MM stamps, $5.4MM of which would be retained by collectors, and $330,000 in non-stamp merchandise;

(8) That the Postal Service's costs to create the stamps sold was $183,000, and that the Postal Service had no increased overhead costs to produce the stamps;

(9) That the Postal Service knew that commemorative stamps were highly profitable and that first class mail returned a marginal profit of more than 52% to the Postal Service at the time of the hypothetical negotiation, and the marginal profit contribution of the KWVM was likely much higher because $5,400,000 in stamps were retained by collecting, representing nearly pure profit to the Postal Service; see *Georgia-Pacific,* 318 F.Supp. at 1120 (factor 8: whether the infringer's use was profitable or unprofitable);

(10) That the Postal Service knew that the overall sales of the KWVM Stamp and the revenue from retained stamp sales, on a per image basis, would exceed that of the average 37 cent commemorative

stamp (see *Georgia-Pacific,* 318 F.Supp. at 1120 (factor 13: the portion of the realizable profit that should be credited to the copyright work as distinguished from non-copyrighted elements);

(11) That the Postal Service knew that Mr. Gaylord had granted, comparable licenses to "The Column" in the past for royalty rates of 10% of net sales for both exclusive and non-exclusive licenses (see *Georgia-Pacific,* 318 F.Supp. at 1120 (factors 1 and 3: the royalties received for the licensing of the copyrighted work; the nature and scope of comparable licenses as exclusive or non-exclusive);

(12) That the Postal Service would itself license the Stamp Image for an 8% royalty; and

(13) That the Postal Service would have to pay Mr. Alli up to $5000 for the use of his photograph.

C.  <u>Running Royalty v Lump Sum</u>

(1) A running royalty is the appropriate approach for assessment of damages here because virtually every comparable license of record, whether of Gaylord's or of third parties, provides a running royalty instead of a one-time, lump sum fee.

(2) The "entire market value" rule, or principle of apportionment, is not applicable here in determining amount of reasonable royalty that infringer would have had to pay to Gaylord, where the copyright covered a marketable article as an entirety and the commercial success of the KWVM Stamp was the result of the presence of "The Column" on the Stamp. *Georgia-Pacific*, 318 F. Supp. at 1134.

(3) The adoption of a lump sum approach requires a showing of a nexus between the methodology and infringing sales, including an explanation of how the lump sum is to be calculated, and no such

nexus exists in this case. *WordTech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d. 1308, 1320-21 (Fed. Cir. 2010).

(4) The three bases for a royalties award are stamps used for mail, stamps retained by collectors, and merchandise.

(5) Gaylord is entitled to at least a 10% royalty on infringing merchandise and infringing stamps retained by collectors, which are similar to merchandise in terms of the Postal Service's promotion and marketing of stamp collecting and the profitability of retained stamps.

(6) Gaylord is entitled to at least a 10% royalty on infringing stamps used for mail to the extent of the amount by which the sales of the KWVM Stamp for mail use exceeded the sales for mail use of the average 37 cent commemorative stamp.

FISH & RICHARDSON P.C.

Dated: April 12, 2013

/s/Heidi E. Harvey
Heidi E. Harvey
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
Tel:  (617) 542-5070
Fax:  (617) 542-8906
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 12th day of April, 2013.

\_\_\_\_/s/Heidi E. Harvey_____

23016784.doc