IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK GAYLORD, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES; <br><br> Defendant. | No.: 06-539C <br><br> Judge Thomas C. Wheeler <br><br> **FILED UNDER SEAL** |

**PLAINTIFF'S POST-TRIAL RESPONDING BRIEF IN SUPPORT OF JUDGMENT**

**ARGUMENT: THROUGH THE LOOKING GLASS, OR HOW THE POSTAL ARGUES WITHOUT EVIDENCE AND WITHOUT SUPPORT FOR THE SAME OUTCOME THAT HAS ALREADY BEEN REVERSED BY THE COURT OF APPEALS**

The Postal Service has set forth an argument that is long-winded and convoluted but ends up in the same place as the argument it made prior to that last remand, i.e., that a small, lump sum payment of $10,000 would be acceptable to Frank Gaylord and would fairly compensate him for the use of his copyrighted work on $29,000,000 worth of stamp and merchandise sales. That argument has already been rejected on appeal, which is what lead to this remand and the Federal Circuit's instruction to make a determination of "the fair market value of a license for the **full scope** of the Postal Service's infringing use based on a hypothetical negotiation with Mr. Gaylord." *Gaylord v. U.S.* (*Gaylord II*), 678 F.3d 1339, 1344 (Fed.Cir. 2012)(emphasis supplied).

The Court of Appeals specifically called out three issues to be addressed, see *Gaylord II*, at 1343-45, which Plaintiff's counsel directly addressed in opening:

> Ms. Harvey:
>
> 22   The Court of Appeals further identified
> 23   three categories of infringing merchandise which the
> 24   Court could think of as the bases for the hypothetical
> 25   negotiation. And you see the quotation of the Court

15

> 1   of Appeals here, numbered with parenthetical one, two,
> 2   and three: stamps used to send mail, unused stamps
> 3   purchased by collectors, and commercial merchandise
> 4   featuring an image of the stamps.

The Postal Service never addresses these issues head on in its brief.

While the Postal Service encouraged its expert to go on at length about matters for which there was no basis in fact or law and upon which he lacked expertise, see D. 110, Plaintiff's Motion in Limine to Exclude Opinion Testimony of Christopher Bokhart and Defendant's Proposed Trial Exhibit 145. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This approach may have some internal logic and appeal if side-stepping accountability is the goal, but it should not be sanctioned in the real world of business.[1]

The pre-litigation licenses entered into by Mr. Gaylord are comparable for merchandise as shown in Table 1, on following page, which summarizes the licenses in evidence.

---

[1] "Real Life" is the title John Alli gave to his photo, which became the Stamp Image. Trial I, Tr. Alli: 372:23-24.

TABLE 1: SUMMARY OF EVIDENCE OF COMPARABLE MERCHANDISE LICENSES

| Licensor | Licensed Work | Scope | Advances | Royalty Rate |
|---|---|---|---|---|
| Frank Gaylord<br><br>PTX 17 (Feb. 1995) | The Column | Exclusive | | 28.3% - 85%<br>Running royalty |
| Frank Gaylord<br><br>PTX 18, DTX 40 (Mar. 1995) | The Column | Exclusive | $16,666 | 10%<br>Running royalty |
| William Lecky (purporting to have the right to license "The Column")<br><br>PTX 42 (Apr. 1998) | The Column | Non-exclusive | $250 | 10%<br>Running royalty |
| Frank Gaylord<br><br>PTX 25 (Aug. 2002) | The Column | Non-exclusive | | 10%<br>Past sales only |
| USPS<br><br>Stipulated Fact 19 (July 2003) | KWVM Stamp | Non-Exclusive: Merchandise | | 8%<br>Running royalty |
| Frank Gaylord<br><br>Hypothetical Negotiation (July 2003) | The Column | Exclusive: Stamps<br><br>Non-exclusive: Merchandise | | |
| Frank Gaylord<br><br>DTX 41 (May 2007) | The Column | Non-exclusive Settlement | | 10%<br>Running royalty |

4

Plaintiff's theory of the case is that merchandise and stamps that were sold but not used are identical, analogous products in every economic and legal sense with respect to a base for royalty calculations and that a royalty of 10% of revenues for both is fair and reasonable. Unable to respond to this argument, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Likewise, with respect to the issue of a running royalty or lump sum, it is also absolutely clear that the parties would have agreed to a running royalty. Both Mr. Gaylord and the Postal Service use running royalties for merchandise. See Table 1, above. A royalty approach extended to stamps that were sold but not used would also be a "running royalty" because the Postal Service would clearly want to pay as it goes. As Mr. Triano testified, the running royalty is the way to equally share the risk and make sure no one "is going to take a bath," Trial II, Tr. Triano. 53:22-54:6. Finally, the record is devoid of evidence that Mr. Gaylord ever negotiated rights in his copyrighted work for a "lump sum."[2] The adoption of a lump sum approach requires a showing of a nexus between the methodology and infringing sales, including an explanation of how the lump sum is to be calculated, and no such nexus exists in this case. *WordTech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d. 1308, 1320-21 (Fed. Cir. 2010).

The Postal Service cites *WordTech* for the proposition that "radically different" licenses cannot be considered comparable in their brief at page 18, but fails to acknowledge its requirement of a showing of nexus. It then relies on lump sum agreements between the Postal Service and third parties for rights in works that are, in fact, "radically different" from the work at issue here. As one example,

---

[2] That Mr. Gaylord received certain advances and up-front payments all at once, i.e., in a "lump" in vernacular terms, does not mean that they represent any agreement to a "lump sum" methodology.

the most knowledgeable Postal Service licensing employee admitted on cross examination that a license for a photograph of a submarine was not comparable to a license for "The Column." Trial II Tr. Owens 221:6-11. **All** of the licenses listed in Table 3 of the Postal Service's post-trial brief were for use of photographs of pre-existing works, not licenses for use of the underlying works themselves, and four of the ten were for works that were not subject to copyright at all. To conclude a lump sum would be appropriate here would be legal error.

With respect to the revenues for stamps "sold but not used, including those retained by collectors," *Gaylord II*, at 1345, the Postal Service also argues that this Court should now ignore evidence that the Postal Service itself has commissioned, paid for, and relied upon since 1999, PFF 24, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That survey shows that revenues from the KWVM Stamp for stamps which were "sold but unused, including those retained by collectors" were $5,400,000. PFF 26 and Plaintiff's Trial Exhibit 29, e.g., at G02410.

Instead, the Postal Service urges the Court to rely upon a document (Defendant's Trial Exhibit 145) and testimony which are fatally flawed, as set forth in Plaintiff's Motion in Limine to Exclude Opinion Testimony of Christopher Bokhart and Defendant's Proposed Trial Exhibit 145, D. 110. The cross-examination at trial of Mr. Kearney only reinforces that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



6

And as set forth in Plaintiff's Motion in Limine, which should have been granted, ████████████████████████████████████████████████

The Postal Service attempts to create one final, grand illusion, from the dove-tailed arguments that stamp sales revenue is not available as a base under the "entire market value rule," D. 129 at page 25, and because there is no "causal link" between the stamp sales and the copyright at issue, D. 129, at 38.

Regarding the "entire market value rule," the Postal Service states (D. 129 at page 25):

> Gaylord's running royalty theory is flawed because it assesses compensation based upon the face value of all of the accused stamps as the royalty base.[3] Gaylord's approach is directly contradicted by the Federal Circuit's entire market value rule, which holds that patentees may not calculate damages based upon sales of a multi-component product unless the patentee shows a demand for the entire product is attributable to the patent feature.

This is not a patent case and the Postal Service cites no case law that has ever applied the "entire market value rule" analysis to copyright infringement. Plaintiff is unaware of any such case.

The "entire market value rule" is a patent law concept that "patentees may not calculate damages based upon sales of a *multi-component* product unless the patentee shows that the demand for the entire product is attributable to the *patented* feature." See D. 129 at 25 citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012) (emphasis added). The "entire market value rule" issue arises in the patent context "[w]here small elements of multi-component products are accused of infringement," *id.*, in which case the Federal Circuit holds that damages should be calculated based on sales of the "smallest salable patent-practicing unit" unless "the presence of [the patented] functionality is what motivates consumers to buy [a multi-component device like] a laptop computer in the first

---

[3] Mr. Gaylord analogizes retained stamps to merchandise and seeks a 10% royalty on the base of merchandise and retained stamps.

place," *id.* It is absolutely clear that the "component" that is being referred to in *LaserDynamics*, and therefore, the situation in which its rule applies, is a **functional** component of a device, where the product or item that is actually sold is made up of several or many or a "plethora" of such functional components, such as computer.

The Postal Service argues that the KWVM Stamp is "akin" to a multi-component product in the patent context, apparently because it has a "**combination** of expressive elements" (emphasis supplied), but what product other than a commodity is not made up of a "combination" of elements? By definition, "expressive" elements protected by copyright are not functional and the analogy breaks down immediately.

The Postal Service also argues that because the stamp itself has a **function** of permitting mail to be transmitted, the sales of the stamps are unrelated to the image that is applied. D. 129 at 25. This is like suggesting that when someone buys a counterfeit Mickey Mouse t-shirt, before Walt Disney Corporation can claim damages for copyright infringement against **the seller**, they have to demonstrate that each individual customer didn't need a t-shirt, any t-shirt, and therefore purchased regardless of the applied image. The Court of Appeals has already implicitly rejected this "causal link" argument made at page 38-40 of the Postal Service's brief, because it is simply a retread of the same "but for" causation argument made by the Postal Service on the second appeal. See Brief of Defendant-Appellee at 28-35, *Gaylord v. U.S.*, 678 F.3d 1339 (Fed. Cir. 2012) (No. 2011-5097). If the Postal Service were correct that there was no "but for" causation, no remand for damages would have been necessary. This argument is "old wine in new bottles."

Even in the patent context, the entire market value rule does not apply where, as here, the protected feature is coextensive with the product. See *Georgia Pacific Corp. v. United States Plywood*

8

*Corp.*, 318 F. Supp. 1116, 1136 (S.D.N.Y.1970) (expressly refusing to apportion damages based on unpatented decorative elements because the patented functional features and the decorative elements "were coupled in an indivisible union of form and function"). Here, the copyright and the stamp are coextensive, since, as the Court of Appeals noted, "The Column," is "the entire subject matter of the stamp," *Gaylord v. U.S.*, 595 F. 3d 1364, 1375 (Fed. Cir. 2010). The stamp is a unitary item; there is no smaller "salable unit." *LaserDynamics*, 694 F.3d at 67. Thus, even if the entire market value were applicable to a copyright case, it would not be applicable to this case on these facts.

Apportionment of profits in copyright law is relevant only when a plaintiff seeks "indirect profits", in which case, the defendant bears the burden of apportioning the profits that were not the result of infringement. *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F. 3d 700, 710 (9th Cir. 2004). "Indirect damages" involve cases where the plaintiff seeks in addition to damages for infringement of the copyrighted work, a percentage of entire profits from operations, such as when infringing songs are performed in a restaurant, and the plaintiff seeks a percentage of the entire revenue of the restaurant. Mr. Gaylord does not seek indirect damages here, and any efforts to foist an indirect damages issue into the case, see, e.g., the *Bouchat* and *University of Colorado* cases, cited at D. 129, pp. 39 and 40, respectively, are disingenuous.

The Postal Service also asserts that "evidence actually contradicts any alleged link, because the KWVM Stamp underperformed the average of other stamps." D. 129 at page 3, see also D. 129 at 39. The Postal Service omits to acknowledge, however, that these numbers are comparing total revenue for retained stamps between the KWVM, a single stamp, and many other multi-stamp issues. In particular at page 39, as the Court can see from the demonstrative exhibit which has been pasted into the brief, the "Distinguished Marines" stamp is a four-stamp panel.

The sleight of hand in this comparison is not an accident and it is also not the Postal Service's expert's idea, because the Postal Service made the same misleading argument in the appeal that resulted in this remand in its appeal brief.  See Brief of Defendant-Appellee at 33, *Gaylord v. U.S.*, 678 F.3d 1339 (Fed. Cir. 2012) (No. 2011-5097).

For the comparison to be honest and relevant, the "total revenue" generated, e.g., by "Southeastern Lighthouses," which was a five-image set, as set forth on Plaintiff's Trial Exhibit 29 at G02410, has to be divided by five, resulting in retained revenue of less than $2MM per stamp image. See Plaintiff's Trial Exhibit 29 at G02411.  Likewise, the "total revenue" for "Arctic Tundra" must be divided by 10, *id*., and for "Mary Cassat" and "Early Football Heroes" must be divided by four, *id*. at G02412.

Plaintiff's Trial Exhibit 29 at pages 2411-2412, shows that in the quarter it was issued, the Korean War Veteran's Memorial Stamp had the second highest revenue of the quarter when the revenue is viewed on a per image basis.   In fact, on a per image basis, the Korean War Veteran's Memorial Stamp generated retained revenue in the top 25% of stamps of its class, shown in Plaintiff's Supplemental Proposed Finding of Fact 60.  The Postal Service's arguments to the contrary are based upon a misleading and incomplete exposition of the evidence as well as the fact that they fed this argument to their expert to give it the appearance of independence.

 The Postal Service is equally cavalier with other fact assertions, such as in its brief, D. 129 at page 4, where it states that this Court found that "the KWVM Stamp is not an adequate commercial substitute for any products sold by Gaylord" and that this finding was affirmed by the Court of Appeals. However, the Court of Appeals said no such thing.  It said merely that the stamp was not an adequate substitute for The Column <u>itself</u>.  *Gaylord v. U.S.*, 595 F.3d 1364, 1375 (Fed. Cir. 2010).

With respect to acceptable substitutes, both the Postal Service ▇▇▇ ignore that the subject matter of the stamp was the "Korean War Veterans' Memorial," not the Korean War generally, and that the "memorial was being honored," see PPF 4 (Trial I, Tr. Failor, 660:17-18) so having decided to issue such a stamp, "the memorial itself" would have to be depicted, *id.* (Trial I, Tr. Failor 660:10). See PPF 2-4 and Plaintiff's Trial Exhibit 206.

Likewise it characterizes Defendant's Trial Exhibit 41 as a "settlement agreement" but there is no evidence of any litigation or even any threatened litigation.  See D. 129 at page 22 ("this [FJ Designs] settlement agreement cannot constitute evidence of an established royalty because the parties entered into the agreement after Gaylord threatened to sue"). The Postal Service cites "DX 117; Tr. II at 72:6-19 (Triano)," see D. 129 at 21, but the testimony contradicts the assertion and stands for the opposite proposition for which the Postal Service cites it:

```
6    Q   So essentially that was a threat of
7    litigation, correct?
8      A [Triano]   That was actually please let's not spend
9    $10,000 each to do the right thing and get $650 back.
10   It wasn't a threat.  It was like, you know, man up,
11   you did it, your client did it, you're ripping him
12   off.  Pay the man and then we go away.  And that's
13   what it was.
```

Perhaps the most specious of the Postal Service's characterizations of the evidence is its argument at page 29 that Mr. Gaylord "willingly licensed 'The Column' for small amounts of money." Mr. Gaylord licensed his work, as shown in Table I, above, for running royalty rates of 10% and more. The amount of revenue those deals generated depended on the results of the particular license and the licensee's performance.  Therefore, what they show is that had the licensees generated $29,000,000 in

sales, Mr. Gaylord would have expected to receive and would have received at least $2,900,000 in royalties.

It is the responsibility and duty of the Postal Service to this Court to accurately and honestly cite the record. Suffice it to say, this Court should proceed with caution before it adopts any unexamined characterizations or assertions of the Postal Service.

Finally, the Postal Service argues that the compensation due to Mr. Gaylord here has to be tempered by the fact that the Postal Service would have, in reality, walked away from the negotiating table and used another image. This is wrong. See *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1159 (Fed. Cir. 1978) ("Determination of a 'reasonable royalty' after infringement, like many devices in the law, rests on a legal fiction. … the 'reasonable royalty' device conjures a 'willing' licensor and licensee, who like Ghosts of Christmas Past, are dimly seen as 'negotiating' a 'license.' There is, of course, no actual willingness on either side…"); *Fromson v. Western Litho Plate and Supply Co.*, 853 F. 2d 1568, 1575 (Fed. Cir. 1988) ("The methodology encompasses fantasy and flexibility; fantasy because it requires a court to imagine what warring parties would have agreed to as willing negotiators…"). See also Trial II Tr., colloquy, 16:10-17:10. Likewise, ex ante, Plaintiff could have refused a license, insisting that the Postal Service use an alternative image, or could have negotiated various aspects of a license, including "the duration of the license agreement," "the appearance and placement of copyright notice," "the approval of press release images," and "the approval of marketing materials," see D. 129 at 33. Although these options may also have existed in a real world negotiation, they, too, are now off the table. Because the Postal Service ignored its own internal policies, did not obtain the necessary rights, and infringed Plaintiff's copyright by creating and selling tens of millions of unauthorized reproductions, Plaintiff can only negotiate his financial compensation.

In sum, the Postal Service has refused to take any affirmative position on any royalty rate for any category of infringing items, has ignored highly comparable licenses for merchandise, and has argued for a lump sum approach without any evidentiary or legal basis to do so.  In addition, it mischaracterizes the facts, including asserting misleadingly that the stamp underperformed its peers when the opposite is true, argues that plaintiff has failed to take the "entire market value rule" into account when that is a rule unique to patent cases and where there is no legal precedent that has ever applied it in a copyright case, and ignores or discounts all of its own evidence of both sales and stamp retention from 2003.   These shortcomings dominate both the structure and substance of the argument and, in light of them, subsidiary issues fall away, and plaintiff will not belabor this responding brief by addressing every one of them.

At the end of the day, the plaintiff's case is, an in *Georgia-Pacific*, "rooted in reality" and "probative evidence," while the defendant's case is based upon "surmise, speculation, 'guesswork opinion', and 'campaign slogans'." *Georgia-Pacific*, 318 F. Supp. at 1122.

For all of the foregoing reasons, including the arguments, evidence, and law cited during the prior five years, two trials, and two remands of this litigation, the plaintiff respectfully requests that the Court enter judgment of a 10% royalty on the sales of merchandise and stamps that were sold by not used, plus prejudgment interest.

|  |  |
|---|---|
|  | FISH & RICHARDSON P.C. |
| Dated:  August 1, 2013 | /s/ *Heidi E. Harvey* |
|  | Heidi E. Harvey |
|  | FISH & RICHARDSON P.C. |
|  | One Marina Park Drive |
|  | Boston, MA  02210 |
|  | Tel:  (617) 542-5070 |
|  | Fax:  (617) 542-8906 |
|  |  |
|  | Attorneys for Plaintiff |
|  | Frank Gaylord |

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of August, 2013.

/s/ Heidi E. Harvey